UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                      :

AMCOR, INC.                   :

                      :   Case No. 08 CV 4508

            Plaintiff,     :

                      :

          - against -     :

                      :

THE CIT GROUP/ COMMERCIAL   :
SERVICES, INC.           :

                      :

           Defendant.    :

                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF RYAN A. BECKER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Ryan A. Becker, Esq., pursuant to 28 U.S.C. §1746, hereby declares:

1.      I am an attorney associated with the firm of Hunton & Williams LLP, counsel to Defendant The CIT Group/ Commercial Services, Inc. ("CIT") in this action. I am fully familiar with all pleadings and proceedings had herein. I make this Declaration in support of CIT's Motion to Dismiss the Complaint.

2.      Attached hereto as Exhibit 1 is a true and correct copy of the Complaint in this action, filed on May 14, 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 23rd day of June, 2008.

                                      _____
                                        Ryan A. Becker

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury, pursuant to 28 U.S.C.

§ 1746, that:

I am Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Defendant

The CIT Group/Commercial Services, Inc.

That on June 23, 2008, I served a true copy of the attached Declaration of Ryan A.

Becker in Support of Defendant's Motion to Dismiss, on Plaintiff's Counsel, at the address listed

below, via the Court's Authorized ECF Transmission Facilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2008

/s/ Bradford C. Mulder
Bradford C. Mulder

TO:    Thomas A. Brown, II
       Orans, Elsen Lupert & Brown LLP
       875 Third Avenue, 28th Floor
       New York, New York 10020
       tbrown@oellaw.com

**Exhibit 1 to Becker Declaration**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                             :

AMCOR, INC.,                  :

                         :

             Plaintiff,         :         08 Civ._____

                         :

        -against-         :         COMPLAINT

                         :

THE CIT GROUP/COMMERCIAL     :
SERVICES, INC.,              :

                         :

         Defendant.      :

------------------------------------------------------------x

      Plaintiff Amcor, Inc. (hereinafter, "Amcor"), by its attorneys Orans, Elsen, Lupert &

Brown LLP, as and for its Complaint against defendant The CIT Group/Commercial Services,

Inc. (hereinafter "CIT") alleges as follows:

### Nature of The Claim

1.     Pursuant to contract, Amcor delivered 60,000 Global Positioning Systems, known as GPS

units, to Linens 'N Things ("LNT") in late 2007.  Because of concerns with LNT's financial

health, Amcor insured the sale of these 60,000 units with CIT at substantial expense.  In late

January, after LNT refused to pay over $4 million due to its deteriorating financial condition,

Amcor properly sought to have CIT honor its insurance obligations and CIT refused.  Amcor

now sues to enforce its rights under its agreement with CIT.

**The Parties**

2.      Plaintiff Amcor is a Delaware Corporation with its principal place of business at 685-A Gotham Parkway, Carlstadt, New Jersey.

3.      Upon information and belief, Defendant CIT is a New York Corporation with its principal place of business at 11 West 42nd Street, New York, New York.

**Jurisdiction, Venue, and Choice of Law**

4.      This Court has subject matter jurisdiction pursuant to (a) 28 U.S.C. §1332(a) in that the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and (b) 28 U.S.C. §1332(a)(1) in that there is diversity of citizenship. Amcor is incorporated in Delaware and CIT is incorporated, upon information and belief, in New York.

5.      Venue is proper in the Southern District of New York under 28 U.S.C. §1391(a)(2) because CIT's headquarters is located in Manhattan, New York, and as such the contract was negotiated, entered into, performed and subsequently breached in Manhattan, New York.

6.      The parties have agreed that the validity, interpretation, and enforcement of the Agreement in question shall be determined and governed by the laws of the State of New York.

**Facts**

7.      In May of 2007, Amcor and LNT entered into a Vendor Agreement pursuant to which Amcor agreed to manufacture and deliver GPS units to LNT. LNT agreed to pay Amcor $140 per unit. LNT ordered a total of 85,000 GPS units from Amcor, 60,000 of which were delivered and invoiced for a total of $8.4 million, and 25,000 of which LNT purported to cancel and which were never delivered. Only the invoices for the 60,000 units are directly at issue in this dispute.

8.      Despite the fact that Amcor manufactured the 60,000 GPS units and delivered them to LNT pursuant to the terms of the Vendor Agreement, LNT refused to pay $4,575,625.60 of the $8.4 million due despite repeated demands that it pay.

9.      LNT raised a series of spurious justifications for its refusal to pay. Upon information and belief, LNT refused to pay solely because it lacked the financial ability to pay all of its vendors and chose not to pay Amcor.

10.     Questions concerning LNT's financial condition were raised during the summer of 2007 before any GPS units were manufactured or shipped. Moreover, Amcor was investing a significant amount of its time, energy and resources into the GPS units to be delivered to LNT. Therefore, on August 31, 2007, after Amcor entered into the Vendor Agreement with LNT but before it committed to deliver the GPS units, Amcor entered into a "Single Customer Credit Approved Receivables Purchasing Agreement" with CIT (the "Agreement", attached hereto as Exhibit A), to insure payment of the GPS invoices.

11.     Amcor paid CIT hundreds of thousands of dollars as consideration for the Agreement. But for the Agreement and the protection it offered, Amcor would not have engaged in the business transaction with LNT.

12.     The Agreement states:

> **Payment of Approved Receivables**. If any undisputed Approved Receivable remains unpaid for more than ninety (90) days after its due date, and you shall have delivered to us . . . a written Request for Payment of Approved Receivable in the form of **Annex B** attached to the Guide, with all of the information and documentation therein specified, requesting that the purchase price of such overdue and unpaid Approved Receivable be paid to you, we shall promptly . . . pay to you the Net Amount of such Approved Receivable . . . . Our obligation to remit funds to you for the amount of any Approved Receivable shall only apply to an Approved Receivable (a) which is free of any claims, offsets or liens whatsoever, excluding any Permitted Lien, **and** (b) where the

3

> inventory and/or service has been received and accepted by the
> Customer without return and without dispute or claim as to price,
> terms, quality, workmanship, breach of warranty, delivery,
> quantity or other offset, **and** (c) where nonpayment by the
> Customer is due <u>solely</u> to the Customer's financial inability to pay,
> **and** (d) which you shall have sold, assigned and transferred to us
> as absolute owner all of your right, title, and interest thereto and
> therein.

Agreement, Paragraph 7. (Emphases in original).

13.     The entire $8.4 million owed by LNT to Amcor were Approved Receivables as defined

by the Agreement.

14.     Payment on the last invoice from Amcor to LNT at issue here was due on December 20,

2007.

15.     As of January 31, 2008, LNT owed Amcor $4.576 million.  No further payments were

made by LNT to Amcor.

16.     On January 31, 2008, as required by paragraph 7 of the Agreement, Amcor timely

submitted a "Request for Payment of Approved Receivable(s)", dated January 28, 2008

requesting payment of approximately $4.576 million from CIT.  (Exhibit B.)

17.     CIT thereafter improperly denied Amcor's request for payment under the Agreement.

18.     Faced with CIT's improper refusal to honor the Agreement and LNT's increasingly

precarious financial situation, Amcor entered into negotiations with LNT to secure payment of

the amount owed on the 60,000 units and settle its dispute with LNT over whether LNT

improperly terminated its orders for the 25,000 units.  Amcor and LNT successfully resolved all

of the issues between them, but LNT filed for protection under Chapter 11 of the Bankruptcy

Code before any further payments were made to Amcor.

4

### Count One: Breach of Contract

19.    Amcor repeats and alleges the allegations contained in paragraphs 1 through 19 as though fully set forth herein.

20.    Defendant CIT entered into a valid and binding contract with Amcor as set forth in Exhibit A hereto.

21.    Amcor fully complied with its contractual obligations.

22.    Conversely, CIT breached its contractual obligations.

23.    As a result of CIT's material breaches of its contractual obligations, CIT has caused Amcor to incur not less than $4.576 million in damages, representing the amount owed Amcor under the Vendor Agreement for the 60,000 GPS units.

WHEREFORE, Plaintiff requests Judgment in its favor and against Defendant as follows:

A.    For compensatory damages in an amount not less than $4.576 million, the exact amount to be determined at trial;

B.    For pre- and post-judgment interest as permitted by law;

C.    For the costs and legal expenses incurred in this suit; and

D.    For such other and further relief as the Court deems just and appropriate.

Dated: May 14, 2008                    ORANS, ELSEN, LUPERT & BROWN LLP

By: _____
Thomas A Brown II (TB 1642)
875 Third Avenue, 28th Floor
New York, New York 10022
(212) 586-2211

*Attorneys for Plaintiffs*

6

# EXHIBIT A



August **31**, 2007

Amcor, Inc.
685A Gotham Parkway
Carlstadt, New Jersey 07072

### SINGLE CUSTOMER CREDIT APPROVED RECEIVABLES PURCHASING AGREEMENT

Re: Linens N' Things (the "Customer")

Ladies and Gentlemen:

This agreement, together with the attached Statement of Additional Procedures, Terms and Conditions and Annex A and B attached thereto (the "Guide"), which Guide is incorporated herein by reference, will confirm your and our agreement (the "Agreement") concerning our performance of certain services and our purchases of certain of your accounts receivable due from the Customer. Capitalized terms used herein without definition shall have the meanings ascribed to them in the Guide:

1.     **CREDIT APPROVAL.**  You shall submit any order for which you seek our credit approval (except for those under credit lines which may have been established for the Customer) to our Credit Department either via computer on-line terminal access or, if you are unable to submit your orders via computer, then by telephone or via telecopier (but, in any event, in writing).  Our credit approval may be withdrawn any time before, but not after, shipment is made and shall be effective only if shipment is made within thirty (30) days from the date specified in the credit approval, or within thirty (30) days from the date of our credit approval if no delivery or services performance date is specified therein. Except with respect to approved sales for which shipment has been made, we shall have the right to adjust the Customer's credit lines from time to time and shall have no liability whatsoever to you or any other person, firm or entity for our not approving, or our withdrawal of approval of, credit to the Customer in the manner provided in this Agreement.

You have advised us that your selling terms are not in excess of sixty (60) days.  As to any Approved Receivable, you agree that you will <u>not</u>, without our prior written consent: (i) change these

terms from our existing credit approval, or extend the maturity date of any invoice; (ii) change the amount (except for credits you may issue in the normal course of your business and otherwise in accordance with this Agreement) or shipping dates; or (iii) grant any other indulgence. In the event you were to do any of these acts without such concurrence by us, any credit approval and assumption of credit risk by us of the respective Approved Receivable(s) shall be and become automatically and immediately, and without any further notice or action by us whatsoever, withdrawn, null, void and of no effect. You also agree to issue credit memoranda promptly (with duplicates to us) upon accepting returns or granting allowances in connection with any Approved Receivable.

2.    **SALE OF APPROVED RECEIVABLES.**  You hereby sell, assign and transfer to us as absolute owner all of your Approved Receivables subject to any Permitted Lien.

3.    **HANDLING AND COLLECTING RECEIVABLES.**  You shall continue to collect payment for each Approved Receivable with payment therefor being remitted directly to you or as authorized by you. Our obligation to pay you for any Approved Receivable shall only be as provided in Paragraph 7 below, and only when all requirements of this Agreement have been satisfied.  Our services hereunder will be provided on a non-notification basis; that is, we will not communicate with your Customer prior to paying you for an Approved Receivable without your prior approval except as set forth in Paragraph 2 of the Guide (see Paragraph 5 of the Guide for information regarding our collection of Non-Approved Receivables).   You will at all times perform your normal accounts receivable bookkeeping, collection and reporting procedures in connection with both Approved Receivables and Non-Approved Receivables.  In order to maintain our credit approval in connection with any Approved Receivable (unless we withdraw or limit our credit approval as permitted by this Agreement), you also agree to perform the collection and reporting procedures (to the extent permitted by law) set forth in Paragraph 3 of the Guide.  In the event we are required to commence suit to collect any delinquent Receivable, you agree to cooperate fully with us and our counsel in prosecuting same.

4.    **FEE.**  For our services hereunder you agree to pay us a fee of 4% of the gross face amount of each Approved Receivable.  The fee for our services under this Agreement shall be paid upon submission of the sales for approval and our purchase of the underlying Approved Receivable.  In the event such fees are not paid to us as required, all credit approvals given by us and any credit risk assumed by us as to each Approved Receivable for which such applicable fees have not been paid to us shall automatically, and without any further notice or action by us whatsoever, be and become withdrawn, null, void and of no effect.  In addition to the fees and charges under this

142378v1

Agreement, you will pay us, as of the date hereof, a Documentation Fee in the amount of $600.00 to compensate us for the use of our in-house legal department and facilities in documenting this agreement and for the initial filing costs.

5.    **REPRESENTATIONS AND WARRANTIES.**  You hereby make to us the representations and warranties contained in Paragraph 4 of the Guide. If you breach any of these representations and warranties, we shall be released from any credit risk whatsoever on each Approved Receivable which may be involved.

6.    **REPORTING AND NOTICES.**  You will maintain, in form acceptable to us (in our commercially reasonable judgment), a detailed aging of all Receivables, payments thereon and of all returns, and you will deliver promptly to us the information and reporting set forth in Paragraph 6 of the Guide. In the event you fail to provide this information to us within three (3) business days of its due date, after notice to you of such failure our credit approvals and assumption of credit losses shall automatically and immediately cease and be deemed to have been thereupon withdrawn, void, null and of no effect as to all Approved Receivables.  You must promptly notify us if any Approved Receivable is not timely paid or if you receive information of any adverse change in the financial condition or business prospects of the Customer. You must notify us promptly of any matters affecting the value, enforceability or collectibility of any Approved Receivable.  Please see Paragraph 8 of the Guide for information regarding our right to conduct inspections and verifications regarding the Receivables and returned merchandise.

7.    **PAYMENT OF APPROVED RECEIVABLES.**  If any undisputed Approved Receivable remains unpaid for more than ninety (90) days after its due date, and you shall have delivered to us, as further set forth herein, a written Request for Payment of  Approved Receivable in the form of **Annex B** attached to the Guide, with all of the  information and documentation therein specified, requesting that the purchase price of such overdue and unpaid Approved Receivable be paid to you, we shall promptly (subject to our verification of any such undisputed Approved Receivable having been credit approved by us and being overdue and unpaid) pay to you the Net Amount of such Approved Receivable.  You agree that when you deliver to us a Request for Payment of Approved Receivable, you shall be deemed to have thereby authorized us to collect all other unpaid Approved Receivables.  Approved Receivables that are one hundred (100) days or more past the invoice date when submitted on **Annex B** shall no longer be Approved Receivables hereunder and we are thereupon released from any liability therefor whatsoever.

Our obligation to remit funds to you for the amount of any Approved Receivable shall only apply to an Approved Receivable (a) which is free of any claims, offsets or liens whatsoever, excluding any Permitted Lien, and (b) where the inventory and/or service has been received and accepted by the Customer without return and without dispute or claim as to price, terms, quality, workmanship, breach of warranty, delivery, quantity or other offset, and (c) where nonpayment by the Customer is due solely to the Customer's financial inability to pay, and (d) which you shall have sold, assigned and transferred to us as absolute owner all of your right, title and interest thereto and therein. Please refer to Paragraph 9 of the Guide for additional information regarding the Customer's financial inability to pay. If an Approved Receivable for which we have paid you is later determined to have been unpaid by the Customer for reasons other than solely the Customer's financial inability to pay, you agree to repurchase such Approved Receivable from us for the same amount we paid to you therefor (less any remittances we may have received in connection with such Approved Receivable). After our payment to you of any Approved Receivable, any and all checks, cash, notes or other instruments or property received by you with respect to such Approved Receivable shall be held by you in trust for us, separate from your own property and funds, and promptly turned over to us. In addition, we shall be entitled in our sole discretion to retransfer to you any Approved Receivable which does not comply with your representations or warranties contained herein, including if it is or becomes subject to a claim. Please see Paragraph 10 of the Guide for additional information regarding returned merchandise, and retransfer of Receivables.

8.    **SPECIAL CUSTOMER PAYMENT APPLICATIONS.**  In the event you have shipped inventory in excess of any particular credit approval or credit line for the Customer, all remittances received from or on behalf of the Customer shall first be applied to payment of Approved Receivables due from the Customer until paid in cash in full, and thereafter any excess shall be applied to payment of Non-Approved Receivables.  In the event a petition in bankruptcy is filed by or against the Customer, any distribution, insolvency dividend, recovery or other payment thereafter received from such proceedings shall be applied pari passu to payment of Approved Receivables and Non-Approved Receivables due from the Customer in the ratio that each bears to the aggregate amount of such distribution, dividend or other recovery payment.

9.    **TERMINATION.**  Either you or we may terminate this Agreement at any time by giving the other written notice of termination stating a termination date not less than sixty (60) days from the date such notice is delivered.  This Agreement continues uninterrupted unless terminated as herein provided. Notwithstanding the preceding sentences of this Paragraph, we may terminate this Agreement immediately upon the occurrence of any of the following events: cessation of your business or the calling of a meeting of your creditors; your failure to meet your debts generally as

142378v1

they mature; the commencement by or against you of any bankruptcy, insolvency, arrangement, reorganization, receivership or similar proceeding under any foreign, federal or state law; breach by you of any representation, warranty or covenant contained herein; or your failure to pay when due any indebtedness or obligation owing by you to us whether under this Agreement or any other agreement to which you and we are parties. We may also terminate this Agreement immediately in the event that we shall reasonably determine that any material provision of this Agreement is not enforceable under applicable law or would require any filing with, or consent or approval by, any governmental authority. Any termination of this Agreement, however, shall not affect obligations of you or us incurred hereunder prior to such termination including, without limitation, our obligation to pay for Approved Receivables arising prior to such termination date (provided that our assumption of credit risks and losses hereunder shall cease upon your failure to pay our fees when due or to deliver to us the information required by this Agreement).

10.    **MISCELLANEOUS.** You hereby indemnify us and hold us harmless from any costs, liabilities and expenses related to this Agreement, and you shall pay to us those attorneys' fees and disbursements incurred by us resulting from our use of outside counsel or our in-house legal department in connection with any exercise or enforcement of our rights hereunder, or any modification, waiver, release or amendment, or any claims or liabilities asserted against us relating to this Agreement. This provision shall survive any termination of this Agreement.

**TO THE EXTENT PERMITTED BY APPLICABLE LAW, YOU AND WE HEREBY IRREVOCABLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING DIRECTLY OR INDIRECTLY OUT OF THIS AGREEMENT. THE VALIDITY, INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT SHALL BE DETERMINED AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK .**

This Agreement can be changed only in writing signed by you and us. This Agreement binds and benefits each of us and our respective successors and assigns; provided, however, that you may not assign this Agreement or your rights hereunder without our prior written consent. You agree that we may, without notifying you, sell, assign or transfer our rights and obligations under this Agreement, including, without limitation, our rights and obligations with respect to the Approved Receivables. Our failure or delay to exercise any right or remedy hereunder shall not constitute a waiver thereof, nor bar us from exercising any of our rights or remedies hereunder at any time, nor shall any course of dealing between you and us change or modify this Agreement. This Agreement will become effective as of the date set forth on the first page hereof but only after this Agreement shall have been accepted by one of our officers in New York, New York, after which we shall

142378v1

forward to you a fully executed copy for your records.  The undersigned has been duly authorized to sign and deliver this Agreement by all necessary and appropriate action on behalf of the Company and this Agreement will be binding upon said Company when so executed and delivered.

This Agreement shall become effective only when accepted below by one of our officers.  This Agreement, when accepted, contains the entire agreement between you and us.  There are no verbal agreements between you and us concerning this Agreement or the subject matter hereof.

Sincerely,

**THE CIT GROUP/COMMERCIAL SERVICES, INC.**

By: _____

Name: _____

Title: _____

Read and Agreed to:

**AMCOR, INC.**

By: _____

Name: _____

Title: _____

Accepted at New York, New York

**THE CIT GROUP/COMMERCIAL SERVICES, INC.**

By: _____

Name: _____

Title: _____

**Single Customer Credit Approved Receivables Purchase Agreement**

**Statement of Additional Procedures, Terms and Conditions**

1.    Definitions.

"Approved Receivable" shall mean each Receivable due from your Customer which has been approved by us for credit in writing, and in which we have an exclusive, first priority lien, subject to any applicable Permitted Lien.

"Net Amount" shall mean, with respect to an Approved Receivable, the gross face amount of such Approved Receivable less any amount in payment of such Approved Receivable you may have received from or on behalf of the Customer, less any trade and cash discounts and less any credits or allowances, as further set forth in the Agreement.

"Non-Approved Receivable" shall mean a Receivable that is not an Approved Receivable.

"Permitted Lien" shall mean the perfected security interest granted by you to any bank, factor or other lender as security for loans or extensions of credit to you by such bank, factor or other lender, which are subject to such form of intercreditor agreement as we may require and request from time to time.

"Receivable" shall mean and include each separately invoiced account created by, or arising from, your sale of inventory to or performance of services for (under any of your trade names or styles or through any of your divisions) the Customer, together with all related instruments, documents, insurance proceeds and general intangibles (including payment intangibles and all other rights to payment); all proceeds thereof, including all property acquired with such proceeds; all of your rights to any merchandise which are represented thereby; and all your right, title, security, guaranties, supporting obligations and letter of credit rights with respect to each Receivable, including all rights to reclamation and stoppage in transit.

2.    Communication With the Customer. We may communicate with the Customer only (a) in connection with a past due Approved Receivables

and/or (b) to obtain current information on the Customer's financial condition and creditworthiness.

3.    Collection and Reporting Procedures.

(i)    At least once each month, the Customer on a past due Receivable shall receive your written statement detailing the delinquency. Each such statement shall age such past due Receivable(s).

(ii)    You shall document all collection related telephonic communications given to, and responses received from, the Customer concerning each delinquent Receivable. You also shall initiate telephonic communication to the Customer before the Receivable becomes thirty (30) days past due, and at least two (2) such calls shall be required in each subsequent thirty (30) day period (i.e., 31-60 days past due and 61-90 days past due) until the Receivable is ninety (90) days past due. All collection calls must involve your authorized representative speaking with a representative of the delinquent Customer who has authority to approve payments on behalf of the Customer, recording the name of such individual, his/her position with the Customer, the date and time of such call, the reason for the delinquency in payment (e.g., cash flow, dispute, paperwork, etc.), the commitment to pay date, and a follow-up date.

(iii)    In the event that your attempts to communicate telephonically with the Customer concerning a past due Receivable are to no avail (e.g., the telephone has been disconnected), your records must so indicate, and you shall then communicate with the Customer in writing.

4.    Representations and Warranties. You hereby represent and warrant that:

(i)    Your legal name is exactly as set forth on the signature page of the Agreement, and you are duly organized, validly existing and in good standing under the laws of the state of your incorporation or organization and are duly qualified

142378v1

to transact business in and are in good standing in all states where required;

(ii)    There are no provisions in your (x) articles of organization or incorporation or bylaws (or any amendments thereto) or (y) in any of your contracts or indentures restricting your compliance with, or your undertaking the acts contemplated by, this Agreement, or (z) requiring the consent or authorization of any person or entity that has not already been obtained, including without limitation, any secured party who may be entitled to notice of execution and delivery of this Agreement;

(iii)    Each Receivable represents an actual and <u>bona fide</u> sale and delivery of inventory or performance of services in the ordinary course of your business, and the inventory being sold and the Receivables created therefrom are your exclusive property;

(iv)    As to each Approved Receivable, the Customer is obligated to pay, in United States Dollars, the full amount stated in the invoice according to its terms without dispute, offset, deduction, defense or counterclaim;

(v)    No inventory sold is subject to any consignment arrangement; all taxes and fees with regard to any Approved Receivable or the inventory sold or services performed are solely your responsibility; and

(vi)    None of the Approved Receivables represents sales or services to any subsidiary, parent or affiliated company.

5.    <u>Collection of Non-Approved Receivables</u>. You may request that we collect for you, at your expense, any Non-Approved Receivable in accordance with our usual practices. In such event, any moneys collected by us on any Non-Approved Receivables will be promptly remitted to you (or as authorized by you, if requested in writing), ten (10) days after our receipt of good funds, less any additional service charge due and payable to us as provided in **Annex A** attached hereto.

6.    <u>Reporting and Other Information</u>.

You shall provide to us:

(i) On the earlier of: (x) ten (10) days after the end of each month, (y) upon your issuance thereof or (z) at any time at our reasonable request, in form acceptable to us (in our commercially

142378v1

reasonable judgment), your aged trial balances of all of your outstanding Receivables owing from the Customer;

(ii)    On the earlier of: (x) ten (10) days after the end of each month, (y) upon your issuance thereof or (z) at any time at our reasonable request, in form acceptable to us (in our commercially reasonable judgment), your sales journal of all your outstanding Receivables owing from the Customer;

(iii)    Within ten (10) days after the end of each of month, without duplication of the foregoing, your proper reconciliations between your aged trial balances and your Receivables owing from the Customer, together with a schedule for the preceding month of each of your Receivables owing from the Customer which you have recorded and clearly identified as Approved Receivables (including those under any credit lines we may have established for the Customer) and their respective sales terms, invoice numbers, dates and amounts

(iv)    Prompt notice of any change in your: name, state of incorporation or registration, location of your chief executive office, place(s) of business, and legal or business structure.

7.    <u>Collection of Approved Receivables</u>. We shall have the right to communicate with and, if necessary in our discretion, commence collection proceedings with respect to, the Customer if: (a) any portion of the Customer's Approved Receivables whatsoever is past due by ten (10) business days or more, or (b) the Customer has undergone an adverse change in its financial condition or business prospects, or (c) the Customer has called a meeting of its creditors or ceased to do business, or (d) the Customer suffered a petition in bankruptcy or insolvency filed by or against the Customer under any foreign, provincial or federal or state law.

Within ten (10) Days of our request to you or from the date of our payment of the price of any Approved Receivable, you shall deliver to the Customer a notice of assignment (as we may reasonably request and provide from time to time to you). At our request, from time to time, you shall use reasonable efforts to cooperate with us in any attempt to comply with our request to file a proof of claim, and including pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure ("FRBP"), and any additional rules, statutes or orders

concerning the transfer of the Approved Receivable or any portion thereof (collectively, "Transfer Rules"). Provided that the purchase price applicable thereto has been received by you, you hereby waive any and all objections to the transfer of the Approved Receivables and the claims with respect thereto and any right to receive notice pursuant to FRBP 3001(e) of such transfer

8.    Inspection and Verification. We may (with prior notice to you) at any time during normal business hours verify and inspect all of your books, accounts, records, files, orders, correspondence and papers which we may deem to be reasonably relevant to the Receivables, the Customer, and/or this Agreement, and your credit and collection procedures and business operations, and we may make photocopies of or extracts from any of the foregoing and inspect any returned merchandise.

9.    Financial Inability to Pay. The Customer's financial inability to pay any Approved Receivable does not include any failure (or refusal) to pay arising from or directly related to (i) changes, of whatever nature, in government or governmental policy, or (ii) the enactment of laws or regulations or the taking of any action, of whatever nature including, without limitation, the taking or nationalizing of private property by any governmental entity whereby payment may not be made or may be made only upon penalty or (iii) natural disaster or act of God, uprising, civil war, civil commotion, war, revolution, invasion and other acts of violence.

10.    Returned Merchandise, Claims and Approved Receivables. (a) In the event merchandise in connection with an Approved Receivable is offered to be returned to you by the Customer solely as a result of the Customer's financial inability to pay for such merchandise, and for which Approved Receivable we shall have already remitted funds to you for the amount thereof, or shall be obligated to remit to you, under this Agreement, then you shall promptly notify us in writing of such offer with all particulars and, upon our written approval to you of your acceptance of such offer of return, you may accept the return of such merchandise, provided such merchandise is returned to you free and clear of all liens and security interests.

(b) Any merchandise which you may receive in connection with such approval of return of

merchandise under an Approved Receivable, solely as a result of the Customer's financial inability to pay, shall: (x) be and at all times be deemed to be our property; (y) at our option, be promptly delivered by you to us at such place as we shall reasonably specify; or (z) at our option, be retained by you for resale by you, employing your best efforts, and us at the best available price. In the event of resale of such returned merchandise to another customer as contemplated by the preceding sentence, (i) if we shall have already remitted funds to you in accordance with this Agreement for the amount of such Approved Receivable, then all proceeds of such resale shall be paid to us or be promptly turned over to us, or (ii) if we shall have not have so remitted to you the amount of such Approved Receivable but shall be obligated to remit funds to you for the amount of such Approved Receivable under this Agreement, then all proceeds of such resale shall be paid to you or be promptly turned over to you, and the difference (if any) between the invoice amount of such Approved Receivable and the proceeds of such resale shall be owing by us to you and promptly remitted by us to you upon the consummation of, and your receipt of the proceeds of, such resale

(c) In addition, we shall be entitled in our sole discretion to retransfer to you any Approved Receivable for which we have made payment and with respect to which the Customer asserts any claim or offset. Upon receipt by you of any retransfer notice, you shall promptly (but in no event later than ten (10) days from the date of such notice) pay to us, by wire transfer of immediately available funds to our account (or such other account as we may specify in writing from time to time), the purchase price with respect to such Approved Receivables plus interest at the JPMorgan Chase Bank, National Association prime rate plus two percent (2%) for the period from and including the date on which payment was made by us with respect to any such Approved Receivable through the date of such repayment.

11.    Financing Statements. You agree to comply with all applicable laws to perfect our interest in the Approved Receivables, and to execute such documents as we may require to effectuate the foregoing and to implement this Agreement. You hereby irrevocably (i) authorize us to file financing statements and all amendments

142378v1

and continuations with respect thereto, all in order to create, perfect and maintain our interest in the Approved Receivables, (ii) ratify and confirm any and all financing statements, amendments and continuations with respect thereto heretofore and hereafter filed by us pursuant to the foregoing authorization, and (iii) agree to reimburse us for the cost of any such filing and preparation fees, and for any Uniform Commercial Code and other applicable search fees.

ANNEX A

**TO THE SINGLE CUSTOMER CREDIT APPROVED RECEIVABLES PURCHASING AGREEMENT**

**ADDITIONAL TERMS AND CONDITIONS**

As permitted in Paragraph 5 of the Guide, AMCOR, INC., a New Jersey corporation (the "Client") hereby agrees that, in the event THE CIT GROUP/COMMERCIAL SERVICES, INC. ("CIT") collects any Non-Approved Receivable on behalf of the Client, CIT shall be entitled to receive, and the Client shall pay or cause to be paid to CIT, the following Collection Processing Charge and Collection Service Fee in connection with each such Non-Approved Receivable:

<u>**Collection Processing Charge**</u>

There shall be a processing charge of $100 for each Non-Approved Receivable collection account turned over to CIT by Client for collection processing by CIT.

<u>**Collection Service Fee**</u>

CIT shall also be entitled to receive a collection service fee of 10% of all moneys collected by CIT or the Client, net of attorneys' fees and all other related costs and expenses incurred by or on behalf of CIT in connection with collection of any Non-Approved Receivable.

**AMCOR, INC.**

By: _____

Name: _____ROBERT URAMAN_____

Title: _____PRESIDENT_____

**THE CIT GROUP/COMMERCIAL SERVICES, INC.**

By: _____

Name: _____

Title: ____Vice President_____

142378v1

Page 11 of 13

**ANNEX B**

**TO THE SINGLE CUSTOMER CREDIT APPROVED RECEIVABLES PURCHASING AGREEMENT**
**REQUEST FOR PAYMENT OF APPROVED RECEIVABLE(S)**
**Confirmatory Assignment Number**

To:  The CIT Group/Commercial Services, Inc.            Date: _01/28/08_ , 2007

Your payment to us for the outstanding past due Approved Receivable account of _____
_LINEN N THING_ having an address at _6 BRIGHTON RD_.
_CLIFTON NJ 0792_ ("Customer")
in the net amount of $_45756256⁰_ is hereby requested pursuant to the terms of the Single
Customer Credit Approved Receivables Purchasing Agreement (the "Agreement"). We hereby
confirm our sale to you of such Approved Receivable(s) of said Customer pursuant to the terms of
the Agreement.

Your obligation to pay us the net amount of such Approved Receivable(s) as the purchase
price thereof arises under your credit approval dated _AUG. 31._ _,200_ in the amount of
$_01,000,000_.

As evidence of each past due Approved Receivable, enclosed are:

A.    Two copies of the outstanding invoice and any credit memos;  ✓
B.    A notarized statement of the Customer's account;
C.    One copy of all correspondence to and from the Customer;  ✓
D.    One copy of our complete collection file on the Customer;  ✓
E.    All guarantees, collateral documents, and security agreements relative thereto;
F.    Proof of delivery to and/or acceptance by Customer; and  ✓
G.    Copy of Customer's purchase order and/or our signed confirmation thereof.  ✓

We certify that: (i) the above information and enclosures are true and correct ; (ii) our
Customer (account debtor) named in the invoice(s) is indebted to us in the net amount(s) shown
thereon and is not entitled to credits or counterclaims except as reflected in the amount demanded
by us above; (iii) each Approved Receivable for which we hereby request payment from you under
the Agreement is free of any claim, offset or lien whatsoever; (iv) nonpayment by the Customer of

142378v1

Page 12 of 13

the Approved Receivable for which we hereby request payment from you under the Agreement is due <u>solely</u> to the Customer's financial inability to pay; (v) we have sold, assigned and transferred to you as absolute owner all of our right, title and interest in each Approved Receivable for which we hereby request payment from you under the Agreement and shall have delivered to you those UCC releases and financing statements as you shall have requested to effect each such sale and transfer; and (vi) all of our representations and warranties in the Agreement are true and correct.

**AMCOR, INC.**

By: _____

Name: _____

Title: _____

142378v1

# EXHIBIT B

## ANNEX B

### TO THE SINGLE CUSTOMER CREDIT APPROVED RECEIVABLES PURCHASING AGREEMENT
### REQUEST FOR PAYMENT OF APPROVED RECEIVABLE(S)
### Confirmatory Assignment Number

To:  The CIT Group/Commercial Services, Inc.                Date: _01/28/08____, 2007

Your payment to us for the outstanding past due Approved Receivable account of ____ _LINEN NTHING_____ having an address at _6 BRIGHTON RD_. _CLIFTON  N j  0792_____("Customer") in the net amount of $_4575625⁶⁰_is hereby requested pursuant to the terms of the Single Customer Credit Approved Receivables Purchasing Agreement (the "Agreement"). We hereby confirm our sale to you of such Approved Receivable(s) of said Customer pursuant to the terms of the Agreement.

Your obligation to pay us the net amount of such Approved Receivable(s) as the purchase price thereof arises under your credit approval dated _AUG. 31.____,2007_ in the amount of $_1.000.000_.

As evidence of  each past due Approved Receivable, enclosed are:

A.    Two copies of the outstanding invoice and any credit memos;  ✓

B.     A notarized statement of the Customer's account;

C.    One copy of all correspondence to and from the Customer;  ✓

D.    One copy of our complete collection file on the Customer;  ✓

E.    All guarantees, collateral documents, and security agreements relative thereto;

F.    Proof of delivery to and/or acceptance by Customer; and  ✓

G.    Copy of Customer's purchase order and/or our signed confirmation thereof.  ✓

We certify that: (i) the above information and enclosures are true and correct ; (ii) our Customer (account debtor) named in the invoice(s) is indebted to us in the net amount(s) shown thereon and is not entitled to credits or counterclaims except as reflected in the amount demanded by us above; (iii) each Approved Receivable for which we hereby request payment from you under the Agreement is free of any claim, offset or lien whatsoever; (iv) nonpayment by the Customer of

142378v1

the Approved Receivable for which we hereby request payment from you under the Agreement is due <u>solely</u> to the Customer's financial inability to pay; (v) we have sold, assigned and transferred to you as absolute owner all of our right, title and interest in each Approved Receivable for which we hereby request payment from you under the Agreement and shall have delivered to you those UCC releases and financing statements as you shall have requested to effect each such sale and transfer; and (vi) all of our representations and warranties in the Agreement are true and correct.

**AMCOR, INC.**

By: _____

Name: _____

Title: _____

142378v1