Richard P. Norton
Ryan A. Becker
HUNTON & WILLIAMS LLP
200 Park Avenue -- 52nd Floor
New York, New York 10166-0005
212 • 309 • 1000

*Attorneys for Defendant*
*The CIT Group/ Commercial Services, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

AMCOR, INC.,

           Plaintiff,

    - against -       Case No. 08 CV 4508 (BSJ)(HBP)

THE CIT GROUP/ COMMERCIAL
SERVICES, INC.,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**DEFENDANT THE CIT GROUP/ COMMERCIAL SERVICES, INC.'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

    Defendant The CIT Group/ Commercial Services, Inc. ("CIT"), by and through its undersigned attorneys, Hunton & Williams LLP, hereby moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

### I.    BACKGROUND

    This action concerns a demand for payment by Plaintiff Amcor, Inc. ("Amcor") against CIT under a Single Customer Credit Approval Receivables Purchasing Agreement (the "Agreement") dated August 31, 2007. (A copy of the Agreement is attached as Exhibit A to the Complaint and hereto as Exhibit 1 to the Declaration of Gerard Imbriano.) In the fall of 2007,

Amcor agreed to sell to Linens 'N Things ("LNT") 85,000 global positioning system ("GPS") units. (Compl. at ¶ 7 (attached hereto as Exhibit 1 to the Declaration of Ryan A. Becker.)) The sale was made by Amcor on credit. In connection with its contract to sell the GPS units to LNT, Amcor and CIT entered into the Agreement, which offers credit protection to Amcor (not "insurance," as alleged in the Complaint) but only in the event that LNT fails to pay Amcor based on its financial inability to pay. (Compl. at ¶ 10.)

Paragraph 7 of the Agreement[1] provides in relevant part as follows:

> PAYMENT OF APPROVED RECEIVABLES … Our obligation to remit funds to you for the amount of any Approved Receivable shall only apply to an Approved Receivable (a) which is free from any claims, offsets or liens whatsoever, excluding any Permitted Lien, and (b) where the inventory and/or service has been received and accepted by the Customer without return and without dispute or claim as to price, terms, quality, workmanship, breach of warranty, delivery, quantity or other offset, and (c) where nonpayment by the Customer is due <u>solely</u> to the Customer's financial inability to pay, and (d) which you shall have sold, assigned and transferred to us as absolute owner all of your right, title and interest thereto and therein.

Based on the plain language of the Agreement, CIT agreed to pay Amcor the full amount (minus a fee) of any payments not made by LNT "where nonpayment by [LNT] is due <u>solely</u> to [LNT's] financial inability to pay." (Agreement at ¶ 7.) The Agreement specifically excepted from coverage any payments withheld by LNT due to any claims, offsets or disputes as to price, quality or workmanship. (<u>Id.</u>)

Paragraph 5 of the Agreement provides that Amcor makes to CIT certain representations and warranties contained in Paragraph 4 of the "Guide." The Guide is the Statement of Additional Procedures, Terms and Conditions annexed to the Agreement. One of Amcor's

---

[1] For purposes of reading the Agreement, Amcor is referred to as "you" and LNT as the "Customer."

representations and warranties under paragraph 4 of the Guide is that "[a]s to each Approved Receivable, the Customer is obligated to pay, in United States Dollars, the full amount stated in the invoice according to its terms without dispute, offset, deduction, defense or counterclaim." Any breach of the representations and warranties by Amcor releases CIT from any credit risk whatsoever. (Agreement at ¶ 5.)

Amcor delivered the GPS units to LNT, (Compl. ¶ 8), but LNT refused to make payment in full to Amcor due to defects in the GPS systems and significant numbers of customer returns. In January, 2008, Amcor sought payment from CIT under the Agreement. (Compl. at ¶ 16.) CIT refused to make payment to Amcor because LNT's failure to pay Amcor was not solely a result of LNT's inability to pay. Rather, CIT refused to pay Amcor because of LNT's offset claims and disputes about the quality of the GPS units. As admitted by Amcor in its Complaint, it entered "negotiations" with LNT to secure payment of the amount owed on the first 60,000 units and "settle its dispute with LNT over whether LNT improperly terminated its orders." (Compl. at ¶ 18.) Furthermore, Plaintiff states that "Amcor and LNT successfully resolved all of the issues between them" after negotiations took place. (Compl. at ¶ 18.) Following Amcor's alleged settlement of its dispute with LNT, Amcor instituted this action wherein Amcor alleges a single claim against CIT for breach of contract. (Compl. ¶¶ 19-23.)

The Complaint should be dismissed because Amcor's claims are specifically excepted from coverage under the Agreement. CIT's obligation to pay under the Agreement applies only to "undisputed" accounts receivable free from any offsets or disputes as to quality or workmanship, and which were due and owing "<u>solely</u>" because of LNT's inability to pay. Furthermore, any settlement reached between Amcor and LNT or the granting of any indulgence

to LNT with respect to its payment obligation automatically voids any obligation CIT has to assume any credit risk. Based on the facts as alleged in the Complaint and the plain language of the Agreement, CIT has no obligation to Amcor and the Complaint should be dismissed.

## II.     STANDARD OF REVIEW

"To survive dismissal, [a] plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'n, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007), quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). The complaint must rest on "plausible grounds" indicating "enough fact to raise a reasonable expectation that discovery will reveal evidence of [plaintiff's claims]." Id. at 1965; see also Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007) (interpreting *Twombly* as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible").

## III.    ARGUMENT

**A.     The Complaint must be dismissed because LNT's failure to pay Amcor
        was a result of Amcor's defective products and not LNT's inability to pay.**

CIT owes Amcor no duty of performance under the Agreement because, as Plaintiff's Complaint and documents referenced therein make clear, a condition precedent to CIT's duty has not been satisfied. The Agreement provides that Amcor would first gain credit approval from CIT for its customer LNT, and Amcor would then deliver merchandise to LNT on credit. (Agreement ¶ 1.) In exchange for a fee of 4% of the invoices for these goods, CIT assumed the risk of any future nonpayment due "solely to the Customer's financial inability to pay." (Agreement ¶ 7, emphasis in original.) In the event of such nonpayment, CIT would pay the net amount of the invoices to Amcor, and would be left with the receivables. Absent such default,

however, Amcor would continue to collect and retain payments directly from LNT, with whom CIT would have no contact. (Agreement at ¶ 4.)

The scope of CIT's obligation to pay is stated in Paragraph 7 of the Agreement, which provides that "[CIT's] obligation to remit funds to [Amcor] for the amount of any Approved Receivable shall only apply to an Approved Receivable" which meets certain conditions. The receivable must be: 1) "free of any claims, offsets or liens whatsoever"; 2) the products sold to LNT must be accepted "without dispute or claim as to price, terms, quality, workmanship, breach of warranty, delivery, quantity or offset"; **and** 3) nonpayment by LNT must be due "solely to [LNT]'s financial inability to pay." (Agreement at ¶ 7, emphasis in original.)

The invoices at issue do not meet these conditions because they were subject to significant dispute and offset between Amcor and LNT. The Complaint itself acknowledges as much in stating that LNT raised "spurious justifications" for its refusal to pay (Compl. at ¶ 9) and references "issues" and a "dispute" between LNT and Amcor. (Compl. at ¶ 18.) The resolution of "issues" alluded to in Paragraph 18 was embodied in a Compromise Settlement Agreement and Release (the "Settlement Agreement") between Amcor and LNT, a copy of which was provided to CIT prior to execution. (Imbriano Decl. Exh. 2.)[2] There, Amcor

---

[2] The court may consider this document on a motion to dismiss. The rule is that a court may consider a document outside the pleadings if (i) it is integral to the complaint; (ii) there is no dispute as to its authenticity; and (iii) there is no material disputed issue of fact regarding it relevance. See, e.g., Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) and cases cited therein. The Settlement Agreement (i) memorializes the apparent resolution of Amcor's dispute with LNT, referenced at ¶ 18 of Plaintiff's Complaint, and is therefore integral to the Complaint; (ii) was transmitted to CIT by Plaintiff and is therefore authentic; and (iii) its content contradicts ¶ 9 of Plaintiff's Complaint, making it highly relevant. See also ATSI, 493 F.3d at 98 (stating that court on a motion to dismiss may consider "documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."). Even if the court declines to consider this document, other allegations in the Complaint make clear that dismissal is appropriate.

acknowledges that "bona fide disputes and controversies exist between AMCOR on the one hand, and LNT, on the other hand." (Settlement Agreement at 2, emphasis added.) It references LNT's belief that "many of the 60,000 GPS Units are defective." Settlement Agreement at 1. Significantly, the word "dispute" appears thirteen times throughout the Settlement Agreement. These statements standing alone demonstrate that the receivables presented to CIT did not meet the criteria required for payment.

But there is more. The Settlement Agreement provides that LNT would pay to Amcor $3.36 million for the GPS units, Settlement Agreement at 3, an offset of over $1.2 million less than the payment amount it sought from CIT. Amcor did not fulfill its obligation under the Agreement to present for payment receivables that were "free of any claims, offsets or liens whatsoever." (Agreement at ¶ 7.) In failing to present undisputed invoices to CIT for payment, Plaintiff's performance did not trigger CIT's obligation. The Agreement provides only credit protection for Amcor, not protection against the risk that its products would be found defective and subject to significant offsets by LNT. Furthermore, Amcor breached its representation and warranty under the Agreement that the Customer (LNT) is obligated to pay the full amount stated in the invoice according to its terms "without dispute, offset, deduction, defense or counterclaim." (Guide at ¶ 4(iv).)

It could of course be the case that LNT's stated reasons for withholding payment masked other motivations that discovery would reveal (though Amcor's acknowledgement of "bona fide" disputes belies any such suggestion). But even if discovery would bear out Plaintiff's contentions regarding the merits of LNT's disputes, that does not affect the disposition of this motion. This follows from the fact that CIT had no obligation under the Agreement to investigate the disputes or otherwise appraise their merits. Where "a dispute arises on a claim

concerning a defect or nonconformity in the goods," a factor is relieved of its obligation to pay. Danleigh Fabrics v. Gazynor-Stafford Indus., 95 A.D.2d 719, 720 (1st Dep't 1983).[3] The court in Danleigh Fabrics continued: "The right to [withhold payment] is founded solely upon the mere existence of a dispute and is in no way premised upon the underlying merit of the claim. The factor is not obligated in any way to investigate or evaluate the dispute or claim." Id. (citing Fortune Fabrics v. Maquire & Co., 72 A.D.2d 977 (1st Dep't 1979) (emphasis added); see also Garden State Yarn Corp. v. Rosenthal & Rosenthal, 99 A.D.2d 721, 722 (1st Dep't 1984) ("[T]he factor merely assures the customer against loss by reason of financial inability to pay; all other problems remain those of the [seller]. Accordingly, having been informed by the buyer that there was a dispute, defendant factor had an absolute right to [withhold payment].").[4]

As these cases make clear, CIT was under no legal obligation to assess the merits of LNT's dispute with Amcor. It follows then that even if the dispute were now revealed to have been meritless, dismissal is still appropriate under Twombly, for no amount of discovery, however much it may reveal about LNT's "secret motivations" for disputing invoices, can alter the rights and duties of the parties as they existed when the requests under the Agreement were made.[5] The plain text of the Agreement, and fidelity to precedent, both require dismissal.

---

[3]   The Agreement is governed by New York law. (Agreement at ¶ 10.)

[4]   The cases cited in this paragraph all refer to traditional factor contracts and, as noted above, the Agreement in this case varies somewhat from that traditional form. But the variation only strengthens the applicability of these cases to the present case. For, in a factor contract, the factor advances a credit to the seller, reserving the right to "charge back" (that is, to reverse the credit) if the buyer raises a dispute. Here, the only difference is that CIT -- the party in the factor's position -- does not even have an obligation to pay the seller unless and until an *undisputed* invoice goes unpaid and the seller makes a claim.

[5]   That LNT has now sought bankruptcy protection several months after these invoices were due does not alter this analysis. The relevant time period to assess LNT's "inability to pay" under the Agreement is when LNT's invoices were 90 days past their due date,

      **B.    Any credit approval or assumption of credit risk by CIT under the Agreement is withdrawn, null and void as <u>a result of the apparent compromise between Amcor and LNT.</u>**

In connection with any "Approved Receivable" under the Agreement, Amcor agreed that it would not, without CIT's prior consent: "(i) change terms from our existing credit approval, or extend the maturity date of any invoice; (ii) change the amount (except for credits you may issue in the normal course of your business and otherwise in accordance with this Agreement) or shipping dates; or (iii) grant any other indulgence." (Agreement at ¶ 1.) By agreeing, without CIT's consent, to accept less than the full amount of the LNT invoices through the Settlement Agreement, Amcor breached the provisions of paragraph 1 of the Agreement. In the event of any such breach, any credit approval and assumption of credit risk by CIT "shall be and become automatically and immediately … withdrawn, null, void and of no effect." (Agreement at ¶ 1.) Thus, CIT has no obligation to make payment to Amcor under the Agreement and the Complaint should be dismissed.

---

and Amcor first demanded payment from CIT for the invoices. (Agreement at ¶ 7.) Amcor first demanded payment from CIT in January, 2008, months before LNT's bankruptcy filing in May, 2008.

## IV.   CONCLUSION

For all of the foregoing reasons, the Complaint should be dismissed.

Dated: New York, New York
June 23, 2008

                      Respectfully submitted,

                      HUNTON & WILLIAMS LLP


                      By: /s/ Ryan A. Becker
                          Richard P. Norton
                          Ryan A. Becker
                          200 Park Avenue
                          New York, New York 10166-0005
                          212 • 309 • 1000
                          rnorton@hunton.com
                          rbecker@hunton.com

                          *Attorneys for Defendant*
                          *The CIT Group/ Commercial Services, Inc.*

## **DECLARATION OF SERVICE**

Bradford C. Mulder, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

I am Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Defendant The CIT Group/Commercial Services, Inc.

That on June 23, 2008, I served a true copy of the attached Defendant The CIT Group/Commercial Services, Inc.'s Memorandum of Law in Support of its Motion to Dismiss, on Plaintiff's Counsel, at the address listed below, via the Court's Authorized ECF Transmission Facilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 23, 2008

/s/ Bradford C. Mulder
Bradford C. Mulder

TO: Thomas A. Brown, II
Orans, Elsen Lupert & Brown LLP
875 Third Avenue, 28th Floor
New York, New York 10020
tbrown@oellaw.com