UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                              :
AMCOR, INC.                                   :
                                              :    Case No. 08 CV 4508(BSJ)(HBP)
                    Plaintiff,                :
                                              :
        - against -                           :
                                              :
THE CIT GROUP/ COMMERCIAL                     :
SERVICES, INC.                                :
                                              :
                    Defendant.                :
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - -X

## DECLARATION OF PATRICK ROHAN IN SUPPORT OF DEFENDANT'S REPLY BRIEF

Patrick Rohan, pursuant to 28 U.S.C. §1746, hereby declares:

1.    I am a Senior Vice President for Defendant The CIT Group/ Commercial Services, Inc ("CIT"). I am familiar with the business records maintained by CIT relating to the agreement and dispute at issue in this case. I make this Declaration in support of CIT's reply brief in support of its Motion to Dismiss the Complaint.

2.    Attached hereto as Exhibit 1 is a true and correct copy of the Compromise Settlement Agreement and Release, with the exhibits attached thereto, provided to CIT by Plaintiff's counsel, which, upon information and belief, memorializes an agreement entered into between Plaintiff Amcor, Inc., and its customer Linens N' Things, as a result of dispute-settlement negotiations discussed at Paragraph Eighteen (¶ 18) of Plaintiff's Complaint.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of July, 2008.

                                        Patrick Rohan

## DECLARATION OF SERVICE

Bradford C. Mulder, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

I am Managing Clerk at the law firm of Hunton & Williams LLP, attorneys for Defendant The CIT Group/Commercial Services, Inc.

That on July 28, 2008, I served a true copy of the attached Reply Declaration of Patrick Rohan in Support of Defendant's Motion to Dismiss, on Plaintiff's Counsel, at the address listed below, via the Court's Authorized ECF Transmission Facilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008

/s/ Bradford C. Mulder
Bradford C. Mulder

TO:     Thomas A. Brown, II
        Orans, Elsen Lupert & Brown LLP
        875 Third Avenue, 28th Floor
        New York, New York 10020
        tbrown@oellaw.com

*__Exhibit 1, Part 1 to Declaration of Patrick Rohan__*

# ORANS ELSEN LUPERT & BROWN LLP
### ATTORNEYS

SHELDON H. ELSEN
LESLIE A. LUPERT
ROBERT L. PLOTZ
THOMAS A. BROWN II

875 THIRD AVENUE
NEW YORK, N.Y. 10022

TELEPHONE: (212) 586-2211
FAX: (212) 765-3662
www.oellaw.com
E-Mail: oel@oellaw.com

April 9, 2008

<u>BY FED EX</u>

Bruce Tenzer, Esq.
Vice President and Assistant Chief Counsel
The CIT Group/Commercial Services, Inc.
11 West 42nd Street
New York, New York 10036

     Re:    <u>Amcor Inc.- Request Under The Single Customer Approved Receivables
Purchasing Agreement dated August 31, 2007 between Amcor and CIT (the
"Agreement")</u>

Dear Mr. Tenzer:

    As you know, I am the attorney for Amcor, Inc. ("Amcor"). Pursuant to the terms of the Agreement, I write to inform you that Amcor has been in discussion with Linens N' Things ("LNT") and has reached a settlement agreement concerning the amount owed by LNT to Amcor. Accordingly, Amcor and LNT have agreed to resolve the issues between them related to Global Positioning Units pursuant to the enclosed Settlement Agreement. Amcor intends to execute and dispatch this Settlement Agreement to LNT tomorrow, April 10. Please advise me no later than 4:00 p.m. on April 10, whether CIT has any objection to the enclosed Settlement Agreement.

    Amcor, Inc. specifically reserves all of its rights and remedies under the Agreement and applicable law.

          Very Truly Yours,

          Thomas A. Brown

cc: Robert Kramer
Enclosure

ROHAN 0001

## COMPROMISE SETTLEMENT AGREEMENT AND RELEASE

This Compromise Settlement Agreement and Release (the "Settlement Agreement" or "Agreement") is entered into between Amcor, Inc. ("AMCOR"), on the one hand, and LNT Merchandising Company, a Delaware limited liability company ("LNT"), on the other hand.

### RECITALS

WHEREAS AMCOR and LNT entered into a Vendor Agreement for "Linens 'N Things" dated as of May 8, 2007 ("Vendor Agreement," a copy of which is attached hereto as Exhibit A);

WHEREAS pursuant to the Vendor Agreement, LNT placed orders for 85,000 units of the AMCOR 3900 Black, Samsung 400 Mhz Sirfill, 1 GB SD, NA, no AC, with multi media ("GPS Units").

WHEREAS AMCOR delivered 60,000 GPS Units to LNT (the "60,000 GPS Units");

WHEREAS AMCOR sent LNT invoices for the 60,000 GPS Units (a list of the invoices between AMCOR to LNT are identified on Exhibit B);

WHEREAS LNT notified AMCOR of LNT's intention to cancel the delivery of 25,000 GPS Units to LNT (the "25,000 GPS Units");

WHEREAS LNT has contended that (a) many of the 60,000 GPS Units are defective and that LNT not be should be required to pay the full amount of the invoices on the 60,000 GPS Units, and (b) LNT cancelled the delivery of the 25,000 GPS Units due to untimeliness, and that the cancellation was legal and appropriate, and that LNT should not be required to pay any amount amounts relating to the 25,000 GPS Units (collectively, the "LNT Claims");

WHEREAS AMCOR has contended that (a) LNT's claims that many of the 60,000 GPS Units are defective is meritless and that LNT should be required to pay the full amount of the invoices on the 60,000 GPS Units, and (b) LNT had no basis for its attempt to cancel the 25,000 GPS Units, the 25,000 GPS units were manufactured and shipped on time, LNT's purported

ROHAN 0002

cancellation of the 25,000 GPS Units is of no force and effect, the 25,000 GPS Units were manufactured solely for LNT, LNT is contractually obligated to take delivery of the 25,000 Units, and LNT's attempt to justify withholding payment on various grounds is impermissible under the Vendor Agreement (collectively, the "AMCOR Claims");

WHEREAS from December 2007 through March 2008, LNT and AMCOR have exchanged correspondence relating to the LNT Claims and the AMCOR Claims (the "Settlement Correspondence," some of which is attached hereto as Exhibit C);

WHEREAS, bona fide disputes and controversies exist between AMCOR on the one hand, and LNT, on the other hand;

WHEREAS, it is the desire of AMCOR and LNT to compromise and settle all matters and issues in dispute between and among them—without mediation, arbitration or litigation, and without any admission of liability—based on the disputes set forth in the Invoices and the Settlement Correspondence, relating in any way and every way to the LNT Claims and the AMCOR Claims or any other claims relating to payments on the 60,000 GPS Units and/or the 25,000 GPS Units (collectively, the "Dispute").

## DEFINITIONS

1.          Definitions.   Quoted terms not otherwise defined in this Settlement Agreement, and for the purpose of this Settlement Agreement only, shall have the following meanings:

   a.     "Parties" shall mean AMCOR and LNT, collectively.

   b.     "Party" shall mean either AMCOR or LNT, individually.

ROHAN 0003

**SETTLEMENT TERMS**

NOW, THEREFORE, for good and valuable consideration, the sufficiency of which is hereby acknowledged by AMCOR and LNT, they do hereby covenant and agree as follows:

2.     General Statement of Settlement.  The Parties acknowledge and agree that this Settlement Agreement represents a settlement of all disputes, claims, or potential causes of action that AMCOR or LNT could have or already have brought based on the Dispute.  It is expressly acknowledged and agreed that the terms of this Settlement Agreement are contractual and not merely recitations of fact.

3.     Payment Terms.

    a.     Balance Payment.  Within thirty (30) days of the date that LNT receives from AMCOR a fully-executed version of the Settlement Agreement, LNT will pay $3,363,963.67 to AMCOR by check made payable to "AMCOR Inc." and sent via Federal Express to AMCOR, Inc., 685A Gotham Parkway, Carlstadt, New Jersey 07072 (the "Balance Payment").  The Balance Payment is calculated as follows:  $4,038,963.60 (starting balance), minus $500,000.00 (amounts LNT is holding back for Rebates as described in paragraph 3.c), minus $175,000.00 (amounts LNT is holding back for Customer Returns as described paragraph 3.d).

    b.     25,000 GPS Units.  Within thirty (30) days of the date that LNT receives from AMCOR a fully-executed version of the Settlement Agreement, LNT will pay $250,000.00 to AMCOR by check made payable to "AMCOR Inc." and sent via Federal Express to AMCOR, Inc., 685A Gotham

ROHAN 0004

Parkway, Carlstadt, New Jersey 07072 (the "25,000 GPS Units Payment").

c.   Rebates. LNT will pay future rebates directly to LNT customers of the 60,000 GPS Units up to $500,000 (the "Rebate Amounts"). If, as of July 1, 2008, the Rebate Amounts are less than $500,000.00, LNT will pay AMCOR the difference between $500,000.00 and the Rebate Amounts by check to "AMCOR Inc." and sent via Federal Express to AMCOR, Inc., 685A Gotham Parkway, Carlstadt, New Jersey 07072. If the Rebate Amounts exceed $500,000.00, within thirty (30) days after LNT provides notice of the final Rebate Amounts to AMCOR, AMCOR will pay the amounts exceeding $500,000.00 to LNT by check made payable to "Linens & Things" and sent via Federal Express to Linens & Things, 6 Brighton Road, Clifton, New Jersey 07012. If rebates are paid after July 1, 2008, and LNT has not retained funds to pay those rebates, LNT will provide notice of any such Rebate Amounts to AMCOR. Within thirty (30) days after LNT provides notice of any such additional Rebate Amounts, AMCOR will pay those amounts to LNT by check made payable to "Linens & Things" and sent via Federal Express to Linens & Things, 6 Brighton Road, Clifton, New Jersey 07012.

d.   Customer Returns. LNT will pay future customer returns directly to LNT customers of the 60,000 Units up to $175,000 (the "Return Amounts"). If, as of February 1, 2009, the Return Amounts are less than $175,000.00, after LNT pays all future customer returns, LNT will pay AMCOR the

difference between $175,000.00 and the Return Amounts by check to "AMCOR Inc." and sent via Federal Express to AMCOR, Inc., 685A Gotham Parkway, Carlstadt, New Jersey 07072. LNT will continue to send GPS Units returned by LNT customers back to AMCOR. If the Return Amounts exceed $175,000.00, within thirty (30) days after LNT returns the GPS Units to AMCOR, AMCOR will pay the amounts exceeding $175,000.00 to LNT by check made payable to "Linens & Things" and sent via Federal Express to Linens & Things, 6 Brighton Road, Clifton, New Jersey 07012.

4.    <u>Additional Payment Terms</u>.  AMCOR will approve two vendor chargebacks for $167,949.60 (VCB# 96994, a copy of which is attached as Exhibit D) and $25,000.00 (VCB #96995, a copy of which is attached as Exhibit E).  These approvals will not impact in any way the Payment Terms discussed in paragraph 3.  LNT agrees that there are no other vendor chargebacks that could apply to any of the GPS Units.

5.    <u>No Admission of Liability</u>.  The Parties have all concluded that litigating the Dispute would be protracted and expensive for all Parties and that settlement is desirable.  The Parties have also taken into account that there is always uncertainty as to the outcome of litigation. The Parties therefore deem it desirable and beneficial that the Dispute be settled in the manner and upon the terms and conditions set forth herein.  No Party admits to any wrongdoing or liability.

6.    <u>Breach</u>.  In the event of a breach of the Settlement Agreement, the prevailing party in a proceeding to enforce this Settlement Agreement, whether by specific performance, temporary injunctive relief, preliminary injunctive relief, permanent injunctive relief, a suit for

ROHAN 0006

damages, or otherwise, shall be entitled to recover, in addition to any other proper relief, its reasonable and necessary court costs, litigation expenses (including but not limited to reasonable and necessary copying charges, postage, and telecommunication charges), and attorneys' fees incurred in the successful prosecution of such litigation.

      7.    <u>Mutual Cooperation</u>.  The Parties agree to cooperate fully and to execute any and all supplemental documents after time to review and negotiate and to take additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

      8.    <u>Mutual Warranties</u>.  Each Party represents and warrants to the other that:

      a.    A duly authorized representative of the Party has read this Agreement in its entirety;

      b.    The Party has discussed all aspects of this Agreement with its attorneys and fully understands all of the provisions and their legal and practical effect;

      c.    The consideration provided for herein is good and valuable;

      ***D.***     ***THE PARTY IS ENTERING INTO THIS AGREEMENT VOLUNTARILY, OF ITS OWN FREE WILL, AND WITHOUT ANY COERCION, UNDUE INFLUENCE, THREAT, OR INTIMIDATION OF ANY KIND OR TYPE WHATSOEVER;***

      e.    The Party has not assigned, pledged, or transferred or purported to assign or transfer to any person or entity any claim, counterclaim, third-party claim, or right which the Party purports to maintain, possess, or own or any portion thereof or interest therein;

ROHAN 0007

f.  All Parties are represented by counsel, and counsel for all Parties have reviewed the Settlement Agreement and counseled their respective clients with regard to the Settlement Agreement before their respective clients signed the Settlement Agreement; and

g.  The person executing this Agreement on behalf of such Party is fully authorized and legally competent to execute this Agreement as the legal, valid and binding act and deed of such Party and is a duly authorized representative of such Party.

9.  <u>AMCOR'S Release</u>.  Subject only to the terms, provisions, limitations and exceptions set forth herein, for and in consideration of the promises, obligations, releases, other lawsuits undertaken, and recitals set forth herein, which recitals are expressly made a part of the consideration of the Settlement Agreement, AMCOR, on its own behalf and on behalf of its agents, servants, attorneys, employees, parent corporations, parent stockholders, officers and directors of parent's subsidiaries, representatives, successors and assigns, releases and forever discharges LNT and each of its parent corporations, subsidiary corporations, affiliated entities, predecessors, successors and assigns, and any of its present and former directors, officers, employees, shareholders, agents, partners, privities, representatives, attorneys, accountants, and all persons acting by, through, under or in concert with them, or any of them, from any and all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, losses, costs, expenses and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, whether or not arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to by the parties relating to the Dispute.  Nothing herein

ROHAN 0008

shall be construed as a release or waiver of any party's obligations under the Settlement Agreement. In addition, AMCOR, and each of AMCOR's successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

AMCOR fully understands that the facts upon which this Settlement Agreement is executed may hereafter be other than or different from the facts now believed by AMCOR and its counsel to be true and expressly accepts and assumes the risk of such possible difference in facts and agrees that this Settlement Agreement shall remain effective notwithstanding any such difference in facts.

10.   <u>LNT's Release</u>.  Subject only to the terms, provisions, limitations and exceptions set forth herein, for and in consideration of the promises, obligations, releases, other lawsuits undertaken, and recitals set forth herein, which recitals are expressly made a part of the consideration of the Settlement Agreement, LNT, on its own behalf and on behalf of its agents, servants, attorneys, employees, parent corporations, parent stockholders, officers and directors of parent's subsidiaries, representatives, successors and assigns, releases and forever discharges AMCOR and each of its parent corporations, subsidiary corporations, affiliated entities, predecessors, successors and assigns, and any of its present and former directors, officers, employees, shareholders, agents, partners, privities, representatives, attorneys, accountants, and all persons acting by, through, under or in concert with them, or any of them, from any and all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts,

ROHAN 0009

agreements, promises, liabilities, damages, charges, losses, costs, expenses and attorneys' fees, of any nature whatsoever, known or unknown, in law or equity, fixed or contingent, whether or not arising out of or relating to any of the acts, omissions or other conduct that have or could have been alleged or otherwise referred to by the parties relating to the Dispute. Nothing herein shall be construed as a release or waiver of any party's obligations under the Settlement Agreement. In addition, LNT, and each of LNT's successors, assigns, legatees, heirs, and personal representatives, expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, or any other similar provision under federal or state law, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

LNT fully understands that the facts upon which this Settlement Agreement is executed may hereafter be other than or different from the facts now believed by LNT and its counsel to be true and expressly accepts and assumes the risk of such possible difference in facts and agrees that this Settlement Agreement shall remain effective notwithstanding any such difference in facts.

11.    <u>Exception to Releases</u>.    Notwithstanding the foregoing releases set forth in paragraphs 9 and 10 of this Agreement, the obligations of the Parties under this Agreement shall survive such releases, and the foregoing releases shall not serve as a bar of defenses to any claims or actions seeking enforcement of this Agreement.

12.    <u>Multiple Copies of Agreement</u>.    This Settlement Agreement may be executed in a number of identical counterparts or with detachable signature pages and shall constitute one agreement, binding upon all Parties thereto as if all Parties signed the same document. The

ROHAN 0010

Parties further agree that copies of this Agreement, including any facsimile copies or .pdf file copies with signatures, shall be binding and treated as an original agreement.

13.   Construction of Agreement.   The terms of this Agreement shall not be construed against any Party as the drafting party.  The terms and provisions of this Agreement have been jointly agreed to and negotiated by the Parties and represent their collective agreement, and therefore any rule that construes ambiguities against the drafter shall have no force or effect.  All personal pronouns used in this Settlement Agreement, whether used in the masculine, feminine or neutral gender, shall include all other genders, and the singular shall include the plural and vice versa.

14.   Binding Agreement.  This Agreement is binding upon—and shall inure to the benefit of—the Parties' heirs, successors in-interest, affiliates, and assigns.

15.   Costs and Attorneys' Fees.  Except as provided for otherwise in paragraph 6 Settlement Agreement, each Party shall bear, pay and discharge all of its respective expenses (including, but not limited to, attorneys' fees) incurred in connection with the Dispute and the negotiation, execution, and performance of this Settlement Agreement.

16.   Severability.   If any provision of this Agreement is prohibited by law, such prohibition shall not affect the validity of the remaining provisions of this Agreement.

17.   Integration Clause and Reaffirmation of Vendor Agreement.  This Settlement Agreement and its attached Exhibits A – E state the entire Settlement Agreement of the Parties with respect to the matters discussed herein, and they supersede all prior or contemporaneous oral or written understandings, settlement agreements, statements, or promises, except for the Vendor Agreement, which shall apply to dealings between AMCOR and LNT, except as concerns the Dispute. The Parties reaffirm that the Vendor Agreement is still an operative and

ROHAN 0011

COMPROMISE SETTLEMENT AGREEMENT AND RELEASE                    Page-10

enforceable agreement, and the Parties agree to continue abiding by the terms of the Vendor Agreement, except that no provision of the Vendor Agreement can modify the resolution of the Dispute as set forth in this Agreement

18.    Modifications in Writing Only.  This Settlement Agreement may not be amended or modified in any respect except by a written instrument duly executed by all of the Parties to this Settlement Agreement or their counsel.

19.    Headings.  The headings and captions contained in this Settlement Agreement are inserted only as a manner of convenience and in no way define, limit, extend, or describe the scope of this Settlement Agreement or the intent of any provision thereof.

20.    No Third Party Beneficiaries.  Except as expressly provided herein, nothing in this Agreement shall be construed so as to confer upon any other person or entity, the rights of a third-party beneficiary.

21.    Recitals.  Each of the Recitals is incorporated herein by this reference and shall become part of the Settlement Agreement.

22.    Governing Law and Venue.  The Agreement shall be governed by, construed, and interpreted in accordance with the domestic laws of the State of New Jersey, without regard to the conflict-of-laws principles thereof, and irrespective of any conflict-of-law provision or other law or rule that would result in the application of the law of another jurisdiction.  Any litigation to enforce this Settlement Agreement shall take place in a court located in New Jersey.

23.    Confidentiality.  The Parties agree that the terms and conditions of this Settlement Agreement are confidential and are not to be disclosed to any third parties for any purpose, except to the minimum extent necessary as required by law or by court order.  The Parties may also disclose the terms of this Settlement Agreement to their respective officers, directors,

ROHAN 0012

shareholders, attorneys and employees, to the limited extent necessary to obtain appropriate approvals of the Settlement Agreement and to fulfill their respective obligations contained in the Settlement Agreement.  If any disclosures described in this paragraph become required, the disclosing party shall take all steps reasonably possible to prevent the further disclosure of the settlement terms.  If asked about the resolution of this case other than for any of the Parties to obtain appropriate approvals of the Settlement Agreement and to fulfill its or obligations, or for any party in response to proper judicial process, the Parties hereto agree that they will only disclose that "the case was settled on mutually acceptable terms, and the parties have agreed not to disclose those terms."  **THE PARTIES HERETO AGREE THAT ANY BREACH OF THE CONFIDENTIALITY PROVISIONS CONTAINED IN THIS PARAGRAPH SHALL BE DEEMED A MATERIAL BREACH OF THIS SETTLEMENT AGREEMENT.**

24.     <u>List of Exhibits</u>.  The following exhibits are attached hereto:

Exhibit A     Vendor Agreement.

Exhibit B     List of Invoice Numbers and Dates.

Exhibit C     Settlement Correspondence.

Exhibit D     VCB# 96994

Exhibit E     VCB# 96995

IN WITNESS WHEREOF, the Parties have caused the Settlement Agreement to be executed, effective as of the later date written below.

ROHAN 0013

By:

AMCOR INC.


By: _____

Printed Name:  Robert Kramer

Its: President


Date: _____


Counsel for AMCOR INC.


_____

Thomas A. Brown II

ROHAN 0014

LNT MERCHANDISING COMPANY, A DELAWARE LIMITED LIABILITY COMPANY

By: _____

Printed Name:  Scott Silver

Its: Executive Vice President

Date: _____

Counsel for LNT Merchandising Company, a Delaware Limited Liability Company

_____
Barry Golden

ROHAN 0015

STATE OF _____          §

COUNTY OF _____          §


BEFORE ME, the undersigned Notary Public in and for said County and State, on this day personally appeared Robert Kramer, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that this person has read the foregoing Settlement Agreement, and fully understood the same, and that this person executed the same, knowingly and voluntarily for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ____ of April, 2008.


Signed, sealed and delivered before me this _____ day of April, 2008


_____
NOTARY PUBLIC


ROHAN 0016

STATE OF _____        §

COUNTY OF _____         §


BEFORE ME, the undersigned Notary Public in and for said County and State, on this day personally appeared Scott Silver, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that this person has read the foregoing Settlement Agreement, and fully understood the same, and that this person executed the same, knowingly and voluntarily for the purposes and consideration therein expressed and in the capacity therein stated.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this ____ of April, 2008.


Signed, sealed and delivered before me this _____ day of April, 2008


_____
NOTARY PUBLIC

ROHAN 0017

Exhibits A, B, D and E to the Settlement
Agreement Are Intentionally Omitted.

ROHAN 0018

# EXHIBIT C

ROHAN 0019

# ORANS, ELSEN & LUPERT LLP
### ATTORNEYS

SHELDON H. ELSEN
LESLIE A. LUPERT
ROBERT L. PLOTZ
THOMAS A. BROWN II

NICHOLAS S. ARONS
JOHN V. GOLASZEWSKI
TIMOTHY D. SINI

875 THIRD AVENUE
NEW YORK, N.Y. 10022

TELEPHONE: (212) 586-2211
FAX: (212) 765-3662
www.oellaw.com
E-Mail: oel@oellaw.com

December 21, 2007

Scott Silver
Executive Vice President
Merchandising
Linens 'N Things
6 Brighton Road
Clifton, New Jersey 07012

Dear Mr. Silver:

We have been retained by Amcor, Inc. ("Amcor") in connection with its contracts to supply Linens 'N Things ("LNT") with 85,000 GPS units.

As you are aware, LNT placed orders for 85,000 GPS units in September of this year and agreed to pay for those units on 30 day net terms. LNT is significantly behind on its payment obligations and currently owes Amcor $6.5 million. In addition, on December 10, 2007, LNT purported to cancel purchase orders for 25,000 of the GPS units. These units were in fact manufactured/shipped by that time, after repeated demand by Linens 'n Things that the units be manufactured. LNT has no basis for its attempt to cancel these orders and the purported cancellation is of no force and effect. These units were manufactured solely for LNT and LNT is contractually obligated to take delivery of these units. Also, LNT's attempt to justify withholding payment on various grounds is impermissible under the 30 day net terms that govern here.

As you should know, the Vendor Agreement between Amcor and LNT provides that the prevailing party in any litigation is entitled to recover its litigation expenses, including reasonable attorneys fees, from the losing party. The contract terms are clear and LNT is in breach of its contractual obligations.

As Robert Kramer of Amcor told you in his email yesterday, Amcor would like to resolve these issues amicably. The process is simply taking too long, however, and Amcor must receive payment forthwith. It has therefore retained my firm to advise it on this issue. If the issue cannot be resolved quickly and satisfactorily, Amcor will not

ROHAN 0020

01-02-2008   15:30    From-                              T-013   P.003/003   F-708

**ORANS, ELSEN & LUPERT** LLP

hesitate to litigate.  Please have your attorneys contact me immediately so that we can
determine whether litigation is necessary.

Very truly yours,

Thomas A. Brown II

cc:    Robert DiNicola
       Francis M. Rowan

ROHAN 0021

## GOLDEN, BARRY

**From:** Robert Kramer [robert@amcorgroupusa.com]
**Sent:** Thursday, December 20, 2007 5:39 PM
**To:** Silver, Scott
**Subject:** RE: AMCOR follow up

Scott,

First of all it is a positive sign that for the first time since the Thanksgiving sale, there is a written communication outlining the situation from your perspective and I thank you for that.
We were being kept in the dark for much too long and were constantly led to believe that "any day now" more funds would be released. Uncertainy in this crucial situation is certainly not helpful.

Without going into the details of your below writing, I would respectfully like to point out the following to you:

1.  The terms of the GPS deal between Linens 'n Things and AMCOR are net 30 days from receipt of goods.  Today , December 20, all goods were supposed to be paid for. A total of roughly $6.5 million is currently due.  Under the terms of the agreement , AMCOR would be responsible for defective returns and at no time have we stated that this responsibility was not going to be honored. If all bills were paid in the normal course of business, AMCOR would be responsible to refund Linens 'n Things the cost of these returns. Holding the funds up front without any proof of actual defective rates is most certainly not part of any agreement and we protest strongly against this measure,which is disproportionate to the problems and causing damage to the well being of our company far beyond the measured responsibility towards the quality of the products sold.

2. We have so far received 150-200 units returns from your stores. Only very few of them actually had a defective issue . We did note that several of the returned units had the UPC code missing, apparently the result of the fact that this was part of the package that needed to be sent to AMCOR to obtain the rebate. This happened despite the fact that Linens 'n Things was not supposed to accept such returns .In addition, we tested several purchases from your store and found no defectives at all. We were told by your merchandising team that they had also taken 8 units for testing and none of them were found to be defective.

3. It is important to note that AMCOR addressed the plug issue at a cost of almost $30,000. All stores have spare plugs and even though it could be possible that a customer would still insist on returning the unit , most issues related tot he plug cand be dealt with.  In any event, AMCOR maintains that this issue , from all evidence that we have collected, is extremely minor.

4. AMCOR has addressed the software issue , which is not related to the maps whatsoever, but has to do with the navigation icon that at rare occastions have been affected by a crash of Windows CE 4.2 . The fix is a relatively easy software download , not unknown in the world of software based devices. AMCOR has done all it could to live up to its responsibilities in this manner.  In any event , from all the evidence we have seen so far, this issue has a minor  impact on the returns.

5. Despite the fact that almost a month has passed, Linens 'n Things has not been able to show any evidence of an epidemic defective rate. Despite our appreciation for the fact that these are busy days, we find it hard to believe that this issue was not addressed at all. We feel a couple of phone calls to stores would have been able to shed light on this issue. Calls by the way we would happily have made for Linens 'n things if we were requested to do so. We did attempt to check the situation with store visits , but were not given access to the information at all.

6. AMCOR as your business partner is available to discuss any problem any time. In spite of our commitment , Linens 'n Things decided to cancel an earlier commitment to 25000 units , which we already manufactured and paid for. This in itself is already a problem of enormous proportions to us for which we right now have no solutions for.

Scott, I kindly request that you reconsider the decision you outlined below. AMCOR is at the brink of going down and this is no exaggeration .
Linens 'n things would show tremendous good faith and care if at least for now a part of the $6.5 million would be paid to us. Even a partial hold would be excessive in light of the situation, but the release of funds  to AMCOR would allow us the time and ability to work with you the coming week to see what options are available to us.

thanks for your attention and regards

Robert

3/11/2008

ROHAN 0022

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

 please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

**From:** Silver, Scott [mailto:SSilver@int.com]
**Sent:** Thursday, December 20, 2007 4:48 PM
**To:** Robert Kramer
**Subject:** RE: AMCOR follow up

Robert –

Hopefully I can clarify from our side where we are on this.

The account is currently being held because we are having a difficult time ascertaining what the real defect rate is in the GPS product we purchased from you. There are facts we know and some yet to be determined, and we have taken what we think is a balanced position on what the inventory liability may turn out to be.

As you probably know, we sold approximately 26,000 units on Black Friday weekend event and the business has subsequently been running at a negative growth rate ( up against zero business last year ) for the month of December. Our sales records show over 6800 units returned already and while a 25+% return rate would be a high number in and of itself, we are not sure how to scale it against the units that were actually opened vs. sitting under a Xmas tree somewhere waiting to be opened.

We know the returns will come into three likely categories: we know there are issues with how the charger plugs do not fit the unit; we know there are software issues in initial boot up in finding the maps; and we know a certain amount of activity will be buyer remorse that is coming back in sealed packages. Unfortunately in the heat of December business it is difficult to get clear enough information out of the stores as to what these ratios look like.

The consumer is likely not utilizing any customer service numbers provided; typically they just bring something back if not satisfied and obviously that does not reflect well on our brand given the front cover and television exposure we gave the item but I'm not going to get into a lot of depth on that right now.

The return rate, thus far, against the likely amount of units opened, thus far, may very well be in the 60-80% range and if that return rate yields another 10,000 units returned after Xmas we will own almost everything we bought ( could be 35-40,000 units). Other than definitively knowing what's in the package vs. opened , the amount of returns for known reasons will have us concerned about the inventory balance.

The current hold on the account does nothing more than hold against what that inventory balance may turn out to be and I do not believe at this point that we will understand anything more until we get past the first week of returns in the post Xmas week.

On another note, I want to clearly let you know that despite any rumors your hear about our financial condition, we have paid our bills all year remarkably well and will continue to.

ROHAN 0023

This is a very singular issue we are dealing with, and had we not had knowledge of 2 potentially major defects and were looking at a normalized return rate, these bills would have been paid already with the likelihood of a very small hold placed to cover small return balances.

We are not taking the urgency of the situation lightly as I understand the issue is stressful for both companies , and we are not avoiding it in any way.

I will be happy to discuss it with you prior to the holiday but I hope that our position on it is clear to you, even as the resolution will require a little more time and patience to get to.

Regards ,

Scott


Scott Silver
Executive Vice President
Merchandising
Linens 'N Things
6 Brighton Road
Clifton, N.J. 07012
973-249-4370 Phone
973-778-3085  Fax


**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Wednesday, December 19, 2007 7:48 PM
**To:** Silver, Scott
**Subject:** FW: AMCOR follow up


Scott,

I sent below e mail yesterday to Bob.  I was hoping I could at least get some kind of response to find out what the status is of past due payments from Linens.
Sadly, not only are we not getting any payments, we are not getting any feedback as to what is going on.
Our situation meanwhile is dire and critical. I can share with you all the communciations from suppliers and banks, but I trust that you can appreciate our predicament.

The way this situation is being treated by Linens is showing enormous disdane for AMCOR as the supplier. It is one thing not to pay the invoices, it is another to completely ignore our communications and requests for clarification. All we are getting is vague promises that are never kept.  I am sure you can understand how frustrating it is to be told that "by tomorrow we should have an answer" and then not hear anything again for days at a time.

Meanwhile , our company is getting closer to having to close our doors each additional day this goes on. The impact and size of this deal is simply to large for us to be able to sustain much longer.
Before we get to that stage , we will of course utilize any means available to us to try and have this resolved . However, there would be no benefit at all to either of us to have to go beyond amicable means to find a way forward.

Scott, this game of buying and selling we play daily is complicated enough when both sides of the deal work together to maximize the mutual benefit. It completely hinges on both sides having the intend to treat each other fair and be honest and up front.
We realize that there are a multitude of issues going on . I am confident that if we discuss these, we will find a way out that works for both parties.  In order for us to be able to address all issues, we absolutely need to get an update on whether or not we are going to get paid.  We need to know either way. Our business lives literally depend on it.

Please be so kind as to respond to me with any kind of update or additional information on this situation and I sincerely hope we can use it as a start to sort out all issues and put this behind us.

3/11/2008

ROHAN 0024

regards,

Robert


Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

---

**From:** Robert Kramer
**Sent:** Tuesday, December 18, 2007 6:18 PM
**To:** 'LeBrun, Bob'
**Subject:** AMCOR follow up

Bob,

I sent you yesterday the invoices and their due dates. As you are now aware , Linens is significantly past due. This despite assurances from you and even your CFO that guaranteed us that we would get paid at the 30 day limit we agreed to. Please understand that I would never have agreed to ship the goods if this was not the case, simply as I do not have the financial tools to on the one hand pay all suppliers and on the other hand wait to get paid.
We are now in an absolute financial crisis and are no longer able to wait for payment . The last thing in the world I want to do is send everybody in my office home , but please understand that that is the situation we are in right now.
My board,banks and suppliers are demanding an answer as to when we get this resolved , so that they can decide on a course of action. This is the kind of action no one wants to see.

Between Jim and myself , we are doing all we can to work with Linens on getting thru all the problems. Despite repeated promises to give us answers on payments , we are in the dark the majority of the time as to what the next step will be.  Each day that goes by increases the agony our business and the people in it are currently experiencing.  Even payments received show sizeable deductions despite our requests not to deduct from invoices, as it will trigger action from CIT who in effect owns these receivables.

Having gone thru the period in which we did everything possible to get the product out as quickly as possible , literally having our people in factory in China night and day, reacting to any possible quality issue with the utmost urgency , achieving the almost impossible task of getting 60,000 units in before black friday, it is astounding to now have to experience a complete lack of urgency in paying AMCOR the funds it is owed.
Not only are we not getting the money owed to us, Linens also decided unilaterally, without any regard to AMCOR's situation to cancel a huge chunk of the PO ( 25000 units) which we already manufactured. In fact , we literally had to pull the some of the products out of the airport at serious additional cost, to prevent having to pay the huge airfreigh cost for these units.  These products have Linens name on it and were manufactured exclusively for Linens. These goods are already paid for by AMCOR and further add to the critical situation we find ourselves in today.

The feedback that we are getting on the payments is that Linens is planning to hold the funds till more is known about the returns. Since we are closely monitoring consumer calls, we are not aware of any quality issues that are cause for extreme concern. In addition, we have installed solutions to all problems, so any consumer can resolve any issue it has with our unit. Our 24/7 customer service is open and available , as is our website.  we feel it is unfair to put us in a position of crisis due to a perceived issue with the quality of our product , but even if it would be an issue, it is still unacceptable to stop payment .  AMCOR is

ROHAN 0025

committed and obliged via the existing VBA to refund Linens any products returned for quality reasons. There is no need to hold reserves for this.

Bob, AMCOR is willing to work thru all the issues . We are committed to accept the responsibility as your business partner to find solutions for the 25000 canceled units , the fines, the returns , etc. However, without getting paid, there will be no partner left to talk to. It is as simple as that.
We will in that case also have to withdraw any past or future commitment we made to Linens as part of this deal, including the rebates.

I am asking you with the utmost urgency to let me know if Linens will be paying the invoices as per agreed by the end of this week. I sincerely hope we can resolve this situation to our mutual benefit . I am willing and committed to do what it takes . I am available 24 hours if you want to meet or discuss this over the phone.

best regards

Robert


Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

 please don't print this e-mail unless you really need to.


The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

_____

**The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.**

ROHAN 0026

3/11/2008

Amcor issues

## GOLDEN, BARRY

Subject: FW: Amcor issues

From: Robert Kramer [mailto:robert@amcorgroupusa.com]
Sent: Thursday, December 27, 2007 4:26 PM
To: Silver, Scott
Subject: RE: Amcor issues

Scott,

Thanks for your note and hope you are feeling better.
The only way we can address the issue below is to sample inventory and see how many are actually defective. from what we so far have sampled, we have seen no issues with the plugs at all whereas the number of units that had the windows problems were minimal. Most units we received back ( about 250 so far) were fine. Quite a few were missing  UPC codes probably used for rebates.
We also know that the market around Thanksgiving was extremely competitive. A lot of deals at $100 and less.without rebates.
We feel customer remorse is a huge issue in the current situation.
We understand that this is a painful situation for Linens as well. Please note however,that we are already stuck with 25000 units that suffered order cancelation.  This is extremely frustrating as AMCOR had repeatedly asked to keep the total order quantity to about 55000-60000 rather than the full 85000, advise which sadly and with 20 20 hindsight was not followed.

In any case, we will have to work together to get thru the issues at hand. If we can for right now please ASAP get our hands on returned inventory so we can sample it and get a better grip on reason for return.
I will also instruct my CFO to immediately provide you with an update on past due balance. Total sold were 60000 units which means $8.4 million at 140 a piece.  there are some deductions I am sure, some of which need urgent discussing as well as they clearly fall outside the scope of the agreement we had with Linens and some checks were received , though nothing close to $3 million total that would get to your $5.3 million. This however will be quickly resolved.
can you in the case that the numbers show that AMCOR's math was correct, release for right now the difference ? Anything would help reduce the pressure we are under right now.
I repeat myself by saying that AMCOR will not be able to discuss solutions at all if we are reduced to a bankruptcy protection situation. I feel this situation would not be beneficial to either of us as any possibility for compromise will be off the table . I need your help to stay afloat , be able to keep the pressure of my banks and vendors at bay and work with you to find a way forward .

thanks and regards

Robert

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ  07072
Office:  (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.

ROHAN 0027

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not

permitted.

---

**From:** Silver, Scott [mailto:SSilver@lnt.com]
**Sent:** Thursday, December 27, 2007 7:53 AM
**To:** Robert Kramer
**Subject:** Amcor issues

Robert -
Sorry I didn't get back to you on Friday. Left early very ill and didn't have any additional information for you over the holiday . I wanted to both respond to your last note and give you a summary view of what is happening with the current returns and inventory as of the close of the pre-xmas selling. There are a couple of summary snapshots below ( and I can provide you with the raw data dumps if you like) .

 As you can see, the adjustments out of inventory are static at this point as the stores are not doing many mark outs or RTV's. The customer returns continue at about 100 units/day and it appears the outbound sales based on the On Hand inventory reduction are running at 200+ units/day. Today and the rest of the week will very likely have the inventory moving upward again and we will track the activity daily . Hopefully it does not balloon too badly but I think there is a high likelihood we will be looking at On Hand inventory of 40,000 units by this time next week if we receive back the same amount of returns in the next 6 days as we received in the last 3 weeks. That said I want to address the points in your note.

I know Bob led you to believe that approximately $1.7M would be released, but as we watched the return rates escalate we realized the $3.6M would not be enough to balance the potential inventory liability. We also have a disconnect in the total as my accounts payable people are telling me your entire balance is $5.3M , not the $6.5M you mentioned in your note. They are forwarding me the records and if you forward me yours we can reconcile that piece of it.

 I am not sure what would qualify for you as an " epidemic defective rate". That will have to be a point of discussion but it is a legitimate dilemna for us if we are sitting next week with 40,000 units of a product fully aware that 35-40% of those units were sold and came back for a variety of reasons without any clear way to identify why or what the issues may be across the inventory base. We still never received a complete answer on how widespread the plug issue was from the production records and whether the software problem is a Windows CE based problem or not , that is not going to be acceptable for a plug and play type of device.

Obviously our brand risks of selling product we know has a significant true defect rate ( 10%? 15%? 20% more? ) are unacceptable to us, and we'll have to deal with that when we have a full picture in a week. We have already made this a centerpiece item of our Black Friday TV advertising and obviously we have disappointed a great many of our customers.

 I have no desire to hold your money past the offset of what the cost of the inventory is at this point until we can fully reconcile the issues. As of now I think the maximum risk would be the $5.3M we are holding. I will advise tomorrow morning what the return situation looks like after today's activity and we can correspond on the AP balance issues as well.


 Thanks , Scott

**From:** Newman, Michael
**Sent:** Wednesday, December 26, 2007 2:22 PM
**To:** Silver, Scott; LeBrun, Bob
**Cc:** Posluszny, Susan
**Subject:** RE: Amcor Returns

YTD
352 units adjusted out of our inventory
7,366 units Returned
803 units RTVs
33,019 units OH
Mike Newman
P: (973) 249-4143

ROHAN 0028

3/11/2008

Amcor issues                                                                                        Page 3 of 3

F: (973) 249-4320
mnewman@lnt.com

**From:** Newman, Michael
**Sent:** Thursday, December 20, 2007 11:26 AM
**To:** Silver, Scott; LeBrun, Bob
**Subject:** Amcor Returns
YTD
348 units adjusted out of our inventory
6,850 units Returned
710 units RTVs
33,770 units OH
Regards,
MN


Scott Silver
Executive Vice President
Merchandising
Linens 'N Things
6 Brighton Road
Clifton, N.J. 07012
973-249-4370 Phone
973-778-3085  Fax

---

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

---

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0029

## GOLDEN, BARRY

Subject: FW: Amcor LNT AR

---

**From:** Jim Keenan [mailto:Jim@amcorgroupusa.com]
**Sent:** Friday, December 28, 2007 10:57 AM
**To:** Silver, Scott
**Cc:** Robert Kramer; Igal Wolkin
**Subject:** Amcor LNT AR

Hi Scott:

Pursuant to your communications with Robert Kramer over the last couple of days, I have attached the LNT AR. It shows:

- invoice, due date and dollar amount
- invoices paid with the dollar amount and your check number
- with a balance owed to Amcor of $5,811,227.10

Scott, using your numbers of the current OH and the higher end percentage of the possibly expected rate-of-return, it would appear that you are holding back more dollars from us than necessary.

I implore you to make a partial payment on the monies owed.

In addition to the nearly $6 million LNT owes us, we are suffering the additional burden - in excess of $3 million - of having already paid for the 25,00 pieces we built exclusively for LNT that were cancelled. To reiterate what Robert has already told you, we are in a very crucial situation. Our lines of credit are sapped and we have no wiggle room.

If you would authorize a check to be cut that we could pick up today or Monday, it would give us some breathing space until you finish analyzing the return situation. In the spirit of the holidays and the new year that is upon us, we are truly hoping you will take this under serious consideration. Thanks for your attention to this matter.

*Jim*

*Jim Keenan*
*National Sales Manager*
*Amcor, Inc.*
*685-A Gotham Parkway*
*Carlstadt, NJ 07072*
*201.334.5556*
*201.460.9481 Fax*
*516.840.6269 Cell*

*The information contained in or with this email, originating from Amcor, Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and /or forwarding of the information contained to third parties is not permitted.*

 please don't print this e-mail unless you really need to.

ROHAN 0030

---

**The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you**

have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0031

3/11/2008

*Exhibit 1, Part 2 to Declaration of Patrick Rohan*

**GOLDEN, BARRY**

**Subject:**            FW: Amcor Returns-12/31

-----Original Message-----
From: Robert Kramer [mailto:robert@amcorgroupusa.com]
Sent: Wednesday, January 02, 2008 3:03 PM
To: Silver, Scott
Subject: RE: Amcor Returns-12/31

Hi Scott,

Best wishes to you for the new year as well.

I received all your updates, thanks for keeping me in the picture.
No need to state that the release of funds this week, as per your writing below, would be
instrumental. Please let me know what can be done in this respect.
I also feel it could be very beneficial if we can have a short meeting reviewing all the
issues we are dealing with in an informal way to see how we can resolve them to our mutual
benefit.
The sitiation on my end is as follow:

1. We are stuck with 25000 units that have been manufactured and worst of all paid for
thru a combination of several finance solutions. This is
$3.5 million in missing revenue that create a huge hole in my finances.
As you know ,the profitability on this deal for AMCOR was very slim to start with and I
guarantee you has turned into significant losses by now, which makes the overall picture
even more problematic.
2. We are not able to meet our bank/supplier( example, TeleAtlas the map provider)
obligations which we will have to face up to. For every week of outstanding debt, we are
incuring very significant finance charges( currently roughly $25K per week).
3. we have obligations resulting from the rebate framework that was part of the deal
between LNT and AMCOR ( approx an estimated $450,000)that need to be paid within the time
frame set.We need to decide ASAP how to proceed.
4. We are looking at performance based deductions for shipping related issues even though
we had a clear commitment that these type of fines would not be levied.

I know that from your end , you are also trying to work thru the issues and I hope that we
can find a way together that keeps us both in good shape.  Please note that I am fully
aware that this is not a pretty picture no matter how or from what side of the fence we
are looking at it.
Again , a substantial release of payment this week would do us a world of good. Please let
me know as soon as possible what  can be arranged.


thanks and regards

Robert



Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ  07072
Office:  (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com
P please don't print this e-mail unless you really need to.

1

ROHAN 0032

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.


-----Original Message-----
From: Silver, Scott [mailto:SSilver@lnt.com]
Sent: Tuesday, January 01, 2008 12:47 PM
To: Robert Kramer
Subject: FW: Amcor Returns-12/31


Robert -

First off Happy New year. Hope you had nice intro to 2008.  Here's the last few days of activity. Inventories are pretty static at this point.
Still taking about 100 units/day in returns and RTVing similar amount.
Can discuss tomorrow but should be able to release substantial funds this week.


Regards , Scott


-----Original Message-----
From: Posluszny, Susan
Sent: Tue 1/1/2008 11:28 AM
To: Silver, Scott; LeBrun, Bob; Newman, Michael; Ogof, Alexander
Subject: RE: Amcor Returns-12/31

YTD


380 units adjusted out of our inventory

8,427 units Returned

1,073 units RTV'ed

31,604 units OH


Please let me know if you would like any additional information.


Thanks,

Sue


---

From: Posluszny, Susan
Sent: Monday, December 31, 2007 11:14 AM
To: Silver, Scott; LeBrun, Bob; Newman, Michael; Ogof, Alexander
Subject: Amcor Returns-12/30


YTD

ROHAN 0033

376 units adjusted out of our inventory

8,334 units Returned

988 units RTV'ed

31,600 units OH

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0034

01-16-2008   08:33   From-                                                T-049   P.002/002   F-793

# ORANS, ELSEN & LUPERT LLP
## ATTORNEYS

SHELDON H. ELSEN
LESLIE A. LUPERT
ROBERT L. PLOTZ
THOMAS A. BROWN II

NICHOLAS G. ARONS
JOHN V. GOLASZEWSKI
TIMOTHY D. SINI

675 THIRD AVENUE
NEW YORK, N.Y. 10022

TELEPHONE: (212) 586-2211
FAX: (212) 765-3662
www.oellaw.com
E-Mail: oel@oellaw.com

January 11, 2008

**By Federal Express**

Scott Silver
Executive Vice President
Merchandising
Linens 'N Things
6 Brighton Road
Clifton, New Jersey 07012

Dear Mr. Silver:

As you know, we have been retained by Amcor, Inc. ("Amcor") in connection with the dispute arising out of its contracts to supply Linens 'N Things ("LNT") with 85,000 GPS units. We understand that you have had several discussions with Robert Kramer of Amcor, but we have yet to hear from your attorneys concerning this dispute. To date your discussions with Mr. Kramer have not produced a satisfactory resolution of this dispute.

Please be advised that unless LNT pays Amcor the full amounts owed by Wednesday January 23, Amcor will take all necessary legal steps to recover the full amount owed for the 85,000 GPS units ordered by LNT.

As Mr. Kramer has repeatedly told you, Amcor would like to resolve these issues amicably, but the time for an amicable resolution is quickly expiring. Once again, I urge you to please have your attorneys contact me immediately so that we can determine whether litigation is necessary.

Very truly yours,

Thomas A. Brown II

cc:    Robert DiNicola
       Francis M. Rowan

# GOLDEN, BARRY

| | |
|---|---|
| **From:** | Robert Kramer [robert@amcorgroupusa.com] |
| **Sent:** | Friday, January 18, 2008 5:43 PM |
| **To:** | Silver, Scott |
| **Subject:** | message |

Scott,

Just got your message .Thanks.

Issues:
1. Buying back inventory: I don't see any situation in which we would be able to do this. We are already stuck with 25000 units on which we will lose significant money  I am sure. It is AMCOR's position that LNT is responsible for this inventory as well. As we discussed, we suggested on numerous occassions to leave it at 50-60K units, especially as we were having a hard time getting credit coverage. LNT insisted on the 85K. It was not even up for discussion. Canceling these while they were already on the airport ready to go was not the right thing to do.

2. Quality issues: Please note that all these units passed QC inspection by an independant 3rd party as well as the factory's internal QC. From all the evidence we have seen ( and we tested so far over 800 units) the defective rate is nowhere close to a level that would justify the delay of payment or any other measure. In fact , if anything , 1/3rd of the units we received back are without the UPC code , which at least seems to indicate that people returned the unit after sending out the rebate form.

3.We have a rebate issue to deal with as well. LNT customers are expecting to get their rebate. We obviously cannot pay it out as we do not have the money. The rebate was based on selling LNT 85000 units and I honestly have no idea how we are going to get thru this.
In addition , on the invoices LNT did pay , marketing funds and shipping fines were already deducted. leaving aside for the moment the fact that under the circumstances it is an outrage to fine AMCOR , it is not right that the full deduction is taken before the full amount  of the outstanding invoices is paid.

I feel strongly that there is no justification to hold over $4 million on our account causing tremendous damage to our ability to operate. As I explained, we need this cash to fund our upcoming portable AC season and we feel that LNT would be responsible for the siginificant damage any further delay of payment  to AMCOR would cause.

Scott , AMCOR went to great lenghts to try and make this deal happen. We arranged credit insurance at a huge cost and flew all products in to ensure they get here on time at the expense of any profit we had left on this deal. We did that because we made the commitment to LNT . We spared no expense.
To now have to deal with a total lack of commitment on LNT's side to pay the bills and live up to  PO commitments made is very unfortunate.
I am still hoping you can find a way to make us whole and get us paid next week.

have a good weekend and regards

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.

ROHAN 0036

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

3/11/2008

ROHAN 0037

3/11/2008

## GOLDEN, BARRY

**From:**     Robert Kramer [robert@amcorgroupusa.com]
**Sent:**     Wednesday, January 23, 2008 6:25 PM
**To:**       Silver, Scott
**Subject:** AMCOR :for settlement purposes only.


Scott,

Thanks for your call today. I am hopeful this is the kind of progress that will allow us to put this whole situation behind us.
You had asked me for a response on a few points and indicated basically a stage approach to finalize everything.

1. LNT will pay $3 million this week towards the remaining balance.

You requested the following from AMCOR in return:

2. Send the information of the rebate applications to cross check against units returned.
3. Issue a RA# for Canadian store returns.
4. Confirmation that AMCOR will release LNT of any responsibilities related to the canceled 25000 units.
5. Agree to hold litigation and wait for your team members to return from their trip to China to set up a meeting to resolve the remaining outstanding issues ( rebates, returns,fines, marketing funds and the remaining invoices to be paid). LNT would hold the remaining payments till after this meeting( approx $1.5 million).

After reviewing this proposal with AMCOR's management and attorneys, please note the following proposal from AMCOR to try and reach a settlement:

1. It is AMCOR's position that the invoices due are independent from any other issues that exist between AMCOR and LNT. It would therefore be incorrect to set pre-conditions on payments towards invoices for product purchased from AMCOR, which in effect entails to holding AMCOR's money hostage to settle other issues.
However, we welcome the fact that you are able to make the payment this week as this would provide tremendous relief from the operational pressure the delay in payments has caused to our company and we will work with you to try and address the concerns you expressed.
Reviewing the open issues to be discussed in the above mentioned meeting to be set up, the maximum exposure related to open issues is about $1 million. We therefore ask for a payment of $3.5 million to cover the remaining balance. We would also ask to have the meeting to resolve all remaining  issues no later than February 7th .

2&3. We will issue the RA# for Canadian stores. Please provide us with the required form or let us know what you need us to do.
 We are also working on getting the information of rebate applicants to you. This will be sent over in batches as we make progress entering all requests into our system.

4&5.Amcor cannot agree to your request that in return for the payment discussed above, Amcor will release it's claim concerning the additional 25,000 units that LNT improperly canceled. Further to the issue raised in point 1 above (*payment of invoices should not be related to any other open issue*) the damages AMCOR incurred by the cancelation are north of $1 million.  In addition, key elements of the deal with Linens 'n things were based on calculations of selling 85,000 units, primarily the rebates ,further acerbating the damages.As you know, LNT was not entitled to cancel these units when it did so and the contract between Amcor and LNT calls for the losing party in any dispute to pay the winning party's legal fees.  Therefore, Amcor is confident it will prevail and that the cost of the litigation over this issue will be covered.                                             Despite the strength of its case, Amcor would of course very much prefer to avoid litigation. We would therefore allow for the meeting planned to take place and see if we can find an amicable way to resolve this issue and hold litigation for the time being.

Please let me know how we can proceed and hopefully finalize all issues as soon as possible.

Thanks and regards


Robert Kramer
President
Amcor, Inc.

ROHAN 0038

3/11/2008

685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

CC: Thomas A.Brown  Orans, Elsen,Lupert&Brown  LLP

please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

ROHAN 0039

3/11/2008

# GOLDEN, BARRY

Subject: FW: AMCOR for settlement purposes only

From: Robert Kramer [mailto:robert@amcorgroupusa.com]
Sent: Tuesday, January 29, 2008 4:44 PM
To: Silver, Scott
Subject: AMCOR for settlement purposes only

Hi Soctt,

Apologies for the delayed response. I have been working hard to find the best forward. It is not easy as I am sure you can appreciate.

The point of view basically is the following ( and this is the view of our board backed up by our attorneys).

1. Our attorney will ask the court by the end of this week if we have no resolution on the open invoices by then, to issue a court order to LNT to show due cause as to why these invoices are not being paid. If it is found ( and the strong conviction on our end is that this will be the case)that no good reason exists , LNT will be forced to pay the invoices as well as all legal fees involved. CIT will be awaiting the response as well before they take any action to claim payment from LNT , as all our receivables are covered by them.

2. At the same time, AMCOR will file a claim that holds LNT responsible for the cancelation of the 25000 units. The foundation of this claim is the repeated insistence on LNT's part that the product needed to be shipped at all cost. LNT had ample opportunity to review the arrival dates of the product that were clearly communicated way in advance and at no time indicated that goods would be canceled. It is the opinion of our legal team that the reason for the cancelation was the disappointing Black Friday sales , nothing else. This is considered clearly a violation of the contract between LNT and AMCOR and therefore not justifiable. Based on prevalent market prices, we can recoup about $2,375,000 for these 25000 units at best. ( we had an offer at $100 for 17000 , but it fell thru as the intended customer has a negative credit rating and we cannot extend any terms).This recoup would constitute a loss of $1,125,000.   Our legal team feels strongly that this loss can be recovered thru legal action. All legal expenses , which would expected to be very significant , would be added to the claim and recovered as well if the damages are recovered.

Scott, it has been my goal to try and find a compromise that I can offer that would make this whole thing go away while protecting both our interests as much as possible. We both agree that that is by far the best way to move forward.
Please note the following compromise proposal from my end. I am pretty confident that I can make this work.

1. LNT pays immediately $3.5 million( by Thursday)
2. LNT meets with AMCOR to review all issues within 1 week . Remaining payment as agreed in that meeting will be made within 1 week thereafter.
3. LNT agrees to purchase an additional 15000 out of the remaining 25000 units at $140. The market for these products should be fine at $149 retail for some time to come. Positioned right in the store , LNT can sell these things and though not making a lot , at least make something while not losing.
4. LNT agrees to cancel the fines levied. I know LNT had to take extra measures to get product to the stores, but AMCOR had to fly in 60,000 pcs as well and again, notified LNT exactly on the delivery schedule from day one. In addition, we had clearly indicated and received confirmation that no fines would be levied against us. We had asked for this assurance knowing we were reliant on airlines' availability not in our control.
5.LNT will take responsibility for all customers that sent in rebates after returning the unit to LNT/AMCOR
6. AMCOR will take responsibility to find a home for the remaining 10000 units while making sure no product is advertised at a lower cost than LNT is selling the product at.
7.AMCOR will continue to take responsibility for defective product only.(no return of products that are good).

Scott, I hope that you review  this proposal for what it is, an attempt to settle this problem while realizing the risk of alternative ways to resolve this.The proposal above does not cost LNT anything other than the burden of additional inventory which I believe will resolve itself over time.  The legal route may very well lead to a net cost to LNT of over $1,4 million.
 If you have any thoughts or other avenues , I would be more than happy to review them. Please note also that I am available to meet and discuss whenever you want. Our group CEO has asked me to tell you that he too will come to the US and discuss alternatives .

3/11/2008

ROHAN 0040

We a⁺₂ committed to finding the best solution out there, but at the same time are under tremendous pressure to prevent any further losses in this deal.

thanks and regards

Robert




Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com
please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

**The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.**

ROHAN 0041

3/11/2008

## GOLDEN, BARRY

**Subject: FW: AMCOR**

**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Friday, February 01, 2008 12:32 PM
**To:** Silver, Scott
**Subject:** FW: AMCOR

Scott,

Thanks for your call this morning and more importantly your efforts to try and resolve the outstanding issues.
To reiterate your proposal:

1. Linens needs to get a release for the 25000 canceled units .
2. Linens will pay all outstanding amounts owed, minus $400,000 + $250,000 to cover rebates ( see point 3)and future defective returns estimated at 5%.
3. AMCOR will forward all rebate information to a rebate fulfillment house to process and pay all rebates. ( estimated at about 7000-7500)

You mentioned that if this would not be acceptable, your attorney had proposed mediation before taking further legal action.

I have discussed this with our attorneys and group CEO.
We can accept your proposal concerning the 60,000 units except for point 1 and think we should resolve that issue immediately. Paying the outstanding invoices has no bearing on the discussion on the 25K units. Can you please review this issue and let me know if these invoices can be paid right away.

I also feel we should go ahead and move the rebates to the rebate  center and have them processed. I think we both agree that the customers need to get their rebates.
This would mean that if you can make it happen, LNT would pay us the outstanding amount minus $400K to cover the rebates and $250K to cover defective returns.

We are not prepared to give you a release for the 25000 cancelled units for nothing.  Our group CEO and attorneys think it would make sense to set up a meeting between AMCOR ( Group CEO and myself) & our attorney and Linens 'n Things & attorney to see if we can resolve the issue of the 25000 cancelled units without litigation and before considering mediation.  Our CEO is in Israel right now, but would make himself available this Monday or Tuesday if you can arrange the meeting on your end.

Please let me know if you can make this happen. I will call you around 1 pm to follow up.

thanks and regards

Robert

-----Original Message-----
**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Friday, February 01, 2008 11:59 AM
**To:** tbrown@oellaw.com
**Subject:** AMCOR

Tom , please review below .

regards

Robert

ROHAN 0042

3/11/2008

Scott,

Thanks for your call this morning and more importantly your efforts to try and resolve the outstanding issues.
To reiterate your proposal:

1. Linens needs to get a release for the  25000 canceled units .
2. Linens will pay all outstanding dues , minus $400,000 +$250,000 to cover rebates ( see point 3)and future defective returns estimated at 5%.
3. AMCOR will forward all rebate information to a rebate fulfillment house to process and pay all rebates. ( estimated at about 7000-7500)

You mentioned that if this would not be acceptable , your attorney had proposed mediation before taking further legal action.

I have discussed this with our attorneys and group CEO.
The outcome of that discussion is that they propose we set up a meeting between AMCOR ( Group CEO and myself)&our attorney and Linens 'n Things& attorney to review and clarify our positions to see if we can find a middle road. The cancelation of the 25000 units would be the issue to discuss.  Our position is that AMCOR will exhaust all options available to mitigate the damages caused by the cancelation.
Our CEO is in Israel right now , but would make himself available this Monday or Tuesday if you can arrange the meeting on your end.
  I do however hope that we can keep the other solutions you proposed in place. Paying the outstanding invoices has no bearing on the discussion on the 25K units .Can you please review this issue and let me know if these invoices can be paid right away.
I also feel we should go ahead and move the rebates to the rebate  center and have them processed. I think we both agree that the customers need to get their rebates.
This would mean that if you can make it happen, LNT would pay us the outstanding amount minus $400K to cover the rebates, -$250K to cover defective returns -the $200,000 fines that will be part of the discussion going forward .

Please let me know if you can make this happen. I will call you around 1 pm to follow up.

thanks and regards

Robert


Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ  07072
Office:  (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

3/11/2008

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0044

**GOLDEN, BARRY**

Subject:                    FW: AMCOR

From: Robert Kramer [mailto:robert@amcorgroupusa.com]
Sent: Monday, February 04, 2008 4:37 PM
To: Silver, Scott
Subject: AMCOR

Scott,

Thanks for the call. I let everyone on my end know we will do a conference call. Since we are all in different locations, I can set up a dial in conference call . Let me know if you want me to set that up , once the call of course is confirmed first.

Just to update our positions:

You had mentioned your willingness to sweeten the deal somewhat and release another $100,000 . I assume you refer reducing the to the hold on the invoices after paying out the bulk of the goods. In light of below , it would only be relevant if we can find a way to separate the problem of the canceled goods from all other issues. I am hoping we can find a way to do this.

AMCOR 's position is that LNT cannot hold payment of most of the $4.5 million outstanding .Since LNT continues to link this payment to a resolution on the 25000 canceled units , AMCOR's attorney will proceed to file an order to show cause on the $4.5 million by tomorrow. I honestly am not completely clear as to why LNT wants to continue to leverage these funds and risk significant additional costs of litigating that point without any obvious advantage gained. Especially also as LNT seems convinced that the cancelation of the 25000 goods was fully justified. Don't you see any way in which we can resolve the $4.5 million and  deal separately with the canceled goods? It would certainly prevent a lot of agony and expenses. The answer is of course based on whether LNT can indeed provide good reasons to the court why these bills for goods received are not being paid.
I am still hoping we can at least resolve that part ;please let me know.

On the rebates: We are shipping all the forms to the agency you provided. I agree this is the right thing to do as AMCOR obviously cannot pay these rebates out as LNT has not paid us and this way consumers don't have to wait. Can you please confirm that AMCOR will not have any further responsibility or liability related to the rebates including any forms that may get lost after they left AMCOR's control and that LNT will deduct actual rebates paid out only and provide AMCOR with a breakdown of such pay outs.

Let me know if there is anything else I can do.

Thanks and regards

Robert

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ  07072
Office:  (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com <http://www.amcorgroupusa.com/> P please don't print this e-mail unless you really need to.

1

ROHAN 0045

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

---

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0046

## GOLDEN, BARRY

| | |
|---|---|
| **From:** | Silver, Scott [SSilver@lnt.com] |
| **Sent:** | Wednesday, February 20, 2008 3:12 PM |
| **To:** | Robert Kramer |
| **Subject:** | RE: AMCOR for settlement purpose only |
| **Attachments:** | Amcor 19228 Open 2008-02-19.xls |

Robert -

I think we should sit down tomorrow afternoon if you are free and go over the last details. I am including a copy of our open balance for you, which after some deductions is at $4057,737. I believe there is an invoice missing on our side to be matched which is for about $296,000 which closes that gap substantially.

So what I'd like to do is get you to sit down with someone on our AP side for 30 minutes just to get all of the invoices matched properly and then you and I can get through the last $100,000 or so in pieces and we'll be done.

Let me know if you are available at 3 or 4 tomorrow and we can get it done.

Thanks , Scott

---

**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Wednesday, February 20, 2008 2:16 PM
**To:** Silver, Scott
**Subject:** AMCOR for settlement purpose only

Hi Scott

Thanks for your time this morning. I sincerely hope we can put an end to this ASAP. I am doing my best to find the middle road here and I appreciate the fact that you are clearly doing the same.

I just want to clarify the points discussed this morning , so we can be 100% sure that we understand exactly what the offer is. Can you please review below and let me know if it is correct or if something was not understood correctly.

The AR balance is right now $4,575,625.60 , after LNT made payments for a total of $3,823,533.50 to date.

Deductions taken from payments made so far:

1.CBW 90547—INVALID CASE PACK—-$41,737.50( can we eliminate this one?see below)

2.VCB-94248— MARKDOWN ALLOWANCE–$167,949.60

3.CBW-92252—IMPROPER LABEL PLACEMENT–$ 7,612.50 (you agreed to take eliminate this charge)

4.1104 UNITS DEFECTIVE RETURNED ( These include roughly 25% with missing UPC codes which indicates they have been use for rebates.In all fairness AMCOR should be allowed to credit back the $140-$50. In addition,LNT in effect paid $137.20 for these units after taking above allowance.)However, maybe we can square all of these issues away against point 1 above?)    total deduction was $154,546

5.28 UNITS SHORT SHIPPED : $3,920

ROHAN 0047

Net owed to AMCOR as per our understanding LNT agrees with then is: $4,575,625.60 -$41,737.50-$167,949.60-$154,546- 3,920 = **$4,207,472.50, or $4,249,210 without the CBW 90547**

From that , rebates will be paid, for which AMCOR is responsible. Let's put the number of $500,000 on that for now. ( we show 8143 $50 rebates in our system and estimate another 1500 or so $30 rebates). This issue is still a sticking point, as we have received back a lot of units with a missing UPC code and also have to pay these rebates without the profit that would have come from the sales of the last 25,000 units , which of course was our intend. However, I hope we can leave this one alone.

Finally, LNT offers to pay AMCOR $250K towards the canceled units.  LNT proposes that instead of paying out the $250K, LNT will keep the funds. In return, LNT will not issue any more charge backs for products returned to AMCOR.

Bottom line, LNT will issue payment for roughly $3,7 million and end there will be no more financial transactions related to the GPS sale. AMCOR will give LNT a global release on the canceled PO.


Thanks and regards




Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ  07072
Office:  (201) 460-8100
Fax: (201) 460-8481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.


The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error, the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.


**The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.**


ROHAN 0048

3/11/2008

## GOLDEN, BARRY

**Subject:** FW: Amcor purchase at LNT

---

**From:** Silver, Scott [mailto:SSilver@lnt.com]
**Sent:** Wednesday, March 05, 2008 10:11 AM
**To:** Robert Kramer
**Subject:** RE: Amcor purchase at LNT

Robert -

If what you are suggesting is that we only gave the customer back $100 on the returns and we collected $150 on the sale then that would be acceptable. I will run the return transactions out of the database to see how many came back and we only provided credit of $100 and I will be copy you on that info.

Just to change gears for a second, it sounded to me before you left that we were pretty much finished on the settlement with LNT accepting the future return/damage responsibility which had about $250,000 in value. The request came somewhat out of the blue from your attorney that he wanted $400,000 and I'm not going any further on this.

If the only issue remaining, as you state below, is the $50 value on misc. rebates then we will be done with this quickly and since the accounts are reconciled between our teams I can get you your money.

Please confirm how you want to proceed.

Thanks , Scott

P.S. Pretty disturbing comments from the customer below about the product.....

---

**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Wednesday, March 05, 2008 10:42 AM
**To:** Sweeney, Jennifer
**Cc:** Silver, Scott
**Subject:** RE: Amcor purchase at LNT

Understood.
Now the only issue remaining, Scott, I think this one is for you, is that AMCOR should credit LNT back excljuding the rebate as well, meaning , we will credit LNT back $140-$50 for all units we have here without UPC code. Is that acceptable?

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.

ROHAN 0049

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not

3/11/2008

permitted.

---

**From:** Sweeney, Jennifer [mailto:jsweeney@lnt.com]
**Sent:** Wednesday, March 05, 2008 10:07 AM
**To:** Robert Kramer
**Cc:** Silver, Scott
**Subject:** RE: Amcor purchase at LNT

Robert,
I had to investigate this further and the customer will be getting her rebate check. It is a LNT policy, if the customer returns something that was recently running on a promotion that we deduct the amount when the item is returned. I have verified that the $50 rebate was deducted when she returned the product to the store so she is in fact due her rebate.

Thanks.
Jennifer

---

**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Wednesday, March 05, 2008 9:55 AM
**To:** Sweeney, Jennifer
**Subject:** RE: Amcor purchase at LNT

Appreciate it, thanks.


Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.


The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

---

**From:** Sweeney, Jennifer [mailto:jsweeney@lnt.com]
**Sent:** Wednesday, March 05, 2008 8:31 AM
**To:** Robert Kramer
**Cc:** Silver, Scott
**Subject:** FW: Amcor purchase at LNT

ROHAN 0050

Robert,
Scott asked that I forward this email to you. It is from one of our Guests that purchased the Amcor GPS. She will not be getting the $50 rebate.

3/11/2008

Jennifer

---

**From:** Sweeney, Jennifer
**Sent:** Wednesday, March 05, 2008 8:27 AM
**To:** 'Debra Edwards'
**Subject:** RE: Amcor purchase at LNT

Good Morning Debra,
I apologize on behalf of Linens 'n Things, but I am glad that the store took care of you. Because of the return you would be ineligible for the mail in rebate. Again, I apologize for any inconvenience this has caused you.

Thank you.
Jennifer

---

**From:** Debra Edwards
**Sent:** Wednesday, March 05, 2008 7:15 AM
**To:** Sweeney, Jennifer
**Subject:** Re: Amcor purchase at LNT

Hello, Yes I did return that Amcor GPS. It was one of the worst things I have ever bought! First of all I bought it in Nov. 2007, I STILL HAVE NOT recieved my $50 rebate, Then we were going to Florida a few weeks ago, had the Amcor GPS plugged in, stopped for something to eat, got back in the truck, plugged the Amcor GPS in and it never came back on! They were very nice about giving me a store credit for this. Debra Edwards

*"Sweeney, Jennifer"* <jsweeney@lnt.com> wrote:
Hello Debra,
My name is Jennifer Sweeney and I am contacting you on behalf of Linens 'N Things in reference to your Amcor purchase. Our records indicate that you purchased the Amcor unit from our store and we are being informed by Amcor that it was in fact returned. Could you please verify this information?

Thank you.
Jennifer Sweeney

**The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.**

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. Try it now.

**The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.**

**The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.**

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0052

3/11/2008

## GOLDEN, BARRY

**From:**     Silver, Scott [SSilver@lnt.com]
**Sent:**     Thursday, March 06, 2008 2:03 PM
**To:**       Robert Kramer
**Subject:** RE: Amcor purchase at LNT for settlement purpose

Robert -

Can meet today @ 5:00 or tomorrow at 10 AM. Let me know what works for you.

Scott

---

**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Thursday, March 06, 2008 1:51 PM
**To:** Silver, Scott
**Subject:** RE: Amcor purchase at LNT for settlement purpose

Hi Scott,

I fully agree. Useless and silly to go any further on the legal path.
I am trying to work out a way to get out of this.
We can meet later today , or tomorrow morning .No problem. Let me know.
Let me see though what you think of an idea I have.

Since everything is now reconciled, our only issue open is the future returns and the canceled units.
Current positions:

LNT:
original position LNT claimed that it is not responsible for any damages on the canceled items.

Settlement offer: LNT has offered AMCOR $250K and offered to not request any further payments towards returns from AMCOR. LNT would hold back the same $250k to cover these future returns.

AMCOR:
Original claim : damages of $137.20 ( agreed net selling price to LNT)- $90 actual product value in the market at close out pricing. $1,180,000.

Settlement offer: AMCOR is willing to compromise at $400k , allow the $250K hold and in effect would get a cash payment of $150K .

Idea for a compromise: We are not that far apart betwen the $400k and 250K. We should try and split the difference and settle for $325k.I believe I would be able to get that done on my end. One provision though. We would ask LNT to pay AMCOR the full amount in cash.AMCOR would continue to process all future returns. AMCOR will issue a credit note at receipt of each return and pay LNT once a month on an agreed upon day ( eg every 15th of the month). We will have a signed agreement in place to cover this arrangement and ensure LNT that these return debits are paid in full and on time.

This arrangement would help us tremendously to off set some of the cash issues we have had to deal with in the last 4 months.

Let me know what you think. I hope it is something you can work with .Either way , let me know if you want to meet up.

best regards

ROHAN 0053

Robert

3/11/2008

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com
P please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

-----Original Message-----
From: Silver, Scott [mailto:SSilver@lnt.com]
Sent: Thursday, March 06, 2008 9:55 AM
To: Robert Kramer
Subject: RE: Amcor purchase at LNT

Robert -

Sounds kind of silly to pay the attorneys and end up less than zero sum from where we are. Are you free to meet later today? Maybe we ca get the rest of this done.

Let me know.

Regards, Scott

-----Original Message-----
From: Robert Kramer <robert@amcorgroupusa.com>
Sent: Wednesday, March 05, 2008 7:20 PM
To: Robert Kramer <robert@amcorgroupusa.com>; Silver, Scott <SSilver@lnt.com>
Subject: RE: Amcor purchase at LNT

Apologies , hit send to soon on the e mail I just noticed. Note continued e mail below.

ROHAN 0054

Hi Scott,

On the rebate: We are on the same page. Thanks.
As to the problem described, I am pretty confident our tech support would have been able to help her resolve the issue which could be caused by several factors, some  not related to the GPS unit itself. Things of course do go wrong from time to time.

On the settlement: Our attorney and board felt that the difference between the damages claimed by AMCOR and the offer by LNT of $250K was not acceptable. AMCOR countered with $400K ( proposed $250K against returns  and $150K cash). It is understood from both you and

3/11/2008

your attorney that this counter offer was rejected and that the $250K was the final offer. As a result, our attorney will file the required paperwork with the courts to start legal proceedings. I understand that this will include two separate issues: the payments due and the damages on the canceled units. I can give you more info once I get the update from our attorney.

I am truly disappointed that this is the next step. I was hoping we could find a way to close the gap, given that we were so close. I still think we should look at ways to resolve this outside of the courts and find the compromise both sides can live with.


Thanks and best regards

Robert


Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ  07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com <http://www.amcorgroupusa.com/> P please don't print this e-mail unless you really need to.



The information contained in or with this email, originating from Amcor
Inc., is confidential and intended solely for the addressee. If this
email has been received in error the receiver is kindly asked to contact
the sender via email or telephone. Revelation, reproduction,
distribution and/or forwarding of the information contained to third
parties is not permitted.




From: Silver, Scott [mailto:SSilver@lnt.com]
Sent: Wednesday, March 05, 2008 11:11 AM
To: Robert Kramer
Subject: RE: Amcor purchase at LNT



Robert -

If what you are suggesting is that we only gave the customer back $100
on the returns and we collected $150 on the sale then that would be
acceptable. I will run the return transactions out of the database to
see how many came back and we only provided credit of $100 and I will be
copy you on that info.

Just to change gears for a second, it sounded to me before you left that
we were pretty much finished on the settlement with LNT accepting the
future return/damage responsibility which had about $250,000 in value.
The request came somewhat out of the blue from your attorney that he
wanted $400,000 and I'm not going any further on this.

If the only issue remaining, as you state below, is the $50 value on
misc. rebates then we will be done with this quickly and since the
accounts are reconciled between our teams I can get you your money.

Please confirm how you want to proceed.

Thanks , Scott

3/11/2008

ROHAN 0055

P.S.  Pretty disturbing comments from the customer below about the
product.....

---

From: Robert Kramer [mailto:robert@amcorgroupusa.com]
Sent: Wednesday, March 05, 2008 10:42 AM
To: Sweeney, Jennifer
Cc: Silver, Scott
Subject: RE: Amcor purchase at LNT

Understood.
Now the only issue remaining, Scott, I think this one is for you, is
that AMCOR should credit LNT back excljuding the rebate as well, meaning
, we will credit LNT back $140-$50 for all units we have here without
UPC code. Is that acceptable?

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ  07072
Office:  (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com <http://www.amcorgroupusa.com/>
P please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor
Inc., is confidential and intended solely for the addressee. If this
email has been received in error the receiver is kindly asked to contact
the sender via email or telephone. Revelation, reproduction,
distribution and/or forwarding of the information contained to third
parties is not permitted.

---

From: Sweeney, Jennifer [mailto:jsweeney@lnt.com]
Sent: Wednesday, March 05, 2008 10:07 AM
To: Robert Kramer
Cc: Silver, Scott
Subject: RE: Amcor purchase at LNT

Robert,

I had to investigate this further and the customer will be getting her
rebate check.  It is a LNT policy, if the customer returns something
that was recently running on a promotion that we deduct the amount when
the item is returned.  I have verified that the $50 rebate was deducted
when she returned the product to the store so she is in fact due her
rebate.

ROHAN 0056

3/11/2008

Thanks.

Jennifer

---

From: Robert Kramer [mailto:robert@amcorgroupusa.com]
Sent: Wednesday, March 05, 2008 9:55 AM
To: Sweeney, Jennifer
Subject: RE: Amcor purchase at LNT

Appreciate it, thanks.

Robert Kramer

President

Amcor, Inc.

685A Gotham Parkway

Carlstadt, NJ 07072

Office: (201) 460-8100

Fax: (201) 460-9481

www.amcorgroupusa.com <http://www.amcorgroupusa.com/>

P please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor
Inc., is confidential and intended solely for the addressee. If this
email has been received in error the receiver is kindly asked to contact
the sender via email or telephone. Revelation, reproduction,
distribution and/or forwarding of the information contained to third
parties is not permitted.

---

From: Sweeney, Jennifer [mailto:jsweeney@lnt.com]
Sent: Wednesday, March 05, 2008 8:31 AM
To: Robert Kramer
Cc: Silver, Scott
Subject: FW: Amcor purchase at LNT

ROHAN 0057

3/11/2008

Robert,

Scott asked that I forward this email to you. It is from one of our
Guests that purchased the Amcor GPS. She will not be getting the $50
rebate.


Jennifer

---

From: Sweeney, Jennifer
Sent: Wednesday, March 05, 2008 8:27 AM
To: 'Debra Edwards'
Subject: RE: Amcor purchase at LNT


Good Morning Debra,

I apologize on behalf of Linens 'n Things, but I am glad that the store
took care of you. Because of the return you would be ineligible for the
mail in rebate. Again, I apologize for any inconvenience this has
caused you.


Thank you.

Jennifer

---

From: Debra Edwards
Sent: Wednesday, March 05, 2008 7:15 AM
To: Sweeney, Jennifer
Subject: Re: Amcor purchase at LNT


Hello, Yes I did return that Amcor GPS. It was one of the worst things I
have ever bought! First of all I bought it in Nov. 2007, I STILL HAVE
NOT recieved my $50 rebate, Then we were going to Florida a few weeks
ago, had the Amcor GPS plugged in, stopped for something to eat, got
back in the truck, plugged the Amcor GPS in and it never came back on!
They were very nice about giving me a store credit for this. Debra
Edwards

"Sweeney, Jennifer" <jsweeney@lnt.com> wrote:

Hello Debra,

My name is Jennifer Sweeney and I am contacting you on behalf of Linens
'N Things in reference to your Amcor purchase. Our records indicate
that you purchased the Amcor unit from our store and we are being
informed by Amcor that it was in fact returned. Could you please verify
this information?

ROHAN 0058

3/11/2008

Thank you.

Jennifer Sweeney

_____

The information contained in this email message may be privileged,
confidential, and protected from disclosure. Any unauthorized use,
printing, copying, disclosure, dissemination of or reliance upon this
communication by persons other than the intended recipient may be
subject to legal restriction or sanction. If you think that you have
received this E-mail message in error, please reply to the sender and
delete this email promptly.

_____

Be a better friend, newshound, and know-it-all with Yahoo! Mobile. Try
it now.
<http://us.rd.yahoo.com/evt=51733/*http:/mobile.yahoo.com/;_ylt=Ahu06i62
sR8HDtDypao8Wcj9tAcJ%20>

_____

The information contained in this email message may be privileged,
confidential, and protected from disclosure. Any unauthorized use,
printing, copying, disclosure, dissemination of or reliance upon this
communication by persons other than the intended recipient may be
subject to legal restriction or sanction. If you think that you have
received this E-mail message in error, please reply to the sender and
delete this email promptly.

_____

The information contained in this email message may be privileged,
confidential, and protected from disclosure. Any unauthorized use,
printing, copying, disclosure, dissemination of or reliance upon this
communication by persons other than the intended recipient may be
subject to legal restriction or sanction. If you think that you have
received this E-mail message in error, please reply to the sender and
delete this email promptly.

_____

The information contained in this email message may be privileged,
confidential, and protected from disclosure. Any unauthorized use,
printing, copying, disclosure, dissemination of or reliance upon this
communication by persons other than the intended recipient may be
subject to legal restriction or sanction. If you think that you have
received this E-mail message in error, please reply to the sender and
delete this email promptly.

ROHAN 0059

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use,
printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject
to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email
promptly.

3/11/2008

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0060

## GOLDEN, BARRY

**Subject:** FW: AMCOR - For settlement

**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Monday, March 10, 2008 1:04 PM
**To:** Silver, Scott
**Subject:** RE: AMCOR - For settlement

Scott,

All below looks OK.
Do you want mr Golden to write something up?

regards

robert

Robert Kramer
President
Amcor, Inc.
685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

**From:** Silver, Scott [mailto:SSilver@lnt.com]
**Sent:** Monday, March 10, 2008 10:36 AM
**To:** Robert Kramer
**Subject:** RE: AMCOR - For settlement

Robert –

Slight adjustment to what you have listed but mostly OK. Will go point by point.

**ROHAN 0061**

#1 - no issue.
# 2 - no issue
#3 - LNT will pay Amcor the $325K but that will be a separate invoice from Amcor for $250K and the balance will be a $75K reduction of the $250K we were holding against the damage returns.
#4 - That leaves us with $175K to hold against the returns which we will RTV against. That leads us to your point #6 which I agree with pending the starting number being slight different.

3/11/2008

#5 - See my point #3 notes.

Also all of this was pending your approval of the two charges pending in our system and were reconciled : The $25,000 fixturing charge and the $167,000 chargeback for the overbilling on the units received.

The summary is, after these two charges clear , we will only be holding back the $500.0 and the $175.0 , paying the balance of the account and cutting you an additional check for $250,000 toward the other inventory you own.

I think we can get this signed and sealed this week.

Regards ,

Scott

---

**From:** Robert Kramer [mailto:robert@amcorgroupusa.com]
**Sent:** Friday, March 07, 2008 6:31 PM
**To:** Silver, Scott
**Subject:** AMCOR

Hi Scott,

Apologies for the delayed follow up.
Thanks for your time today and I am really happy we were able to finalize our issues today.
I was not able to get the OK yet from our board, but I am confident that I will receive this over the weekend.

To summarize our discussion:

1.AP/AR has been reconciled .remaining balance will be paid immediately upon final confirmed agreement as per the following points:
2.LNT will hold $500K against the rebate. We will review this once all the rebates have been paid and reconcile any differences.
3. LNT will pay Amcor $325K towards the canceled  units.
4.LNT will hold back $150K against future returns.
5.LNT will pay AMCOR the remaining balance of the $325K in cash: $175K.
6. LNT will continue to send the RTV'ed GPS units back to AMCOR. Once the returns reach the level of the $150K hold back, AMCOR will pay LNT any additional funds owed within 30 days after receipt of returned goods.


Scott, let me  know if I am missing something. I am also looking forward to working with you and your team to see if we can sell a few other products together that will enable us to make up for the negative impact the GPS deal in the end had for both of us. I really appreciated the meeting with your CEO and most of all appreciate the spirit of cooperation you have offered me thru out the process.

Have a great weekend and regards

Robert


Robert Kramer
President
Amcor, Inc.

ROHAN 0062

3/11/2008

685A Gotham Parkway
Carlstadt, NJ 07072
Office: (201) 460-8100
Fax: (201) 460-9481
www.amcorgroupusa.com

 please don't print this e-mail unless you really need to.

The information contained in or with this email, originating from Amcor Inc., is confidential and intended solely for the addressee. If this email has been received in error the receiver is kindly asked to contact the sender via email or telephone. Revelation, reproduction, distribution and/or forwarding of the information contained to third parties is not permitted.

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

The information contained in this email message may be privileged, confidential, and protected from disclosure. Any unauthorized use, printing, copying, disclosure, dissemination of or reliance upon this communication by persons other than the intended recipient may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender and delete this email promptly.

ROHAN 0063

3/11/2008